## Lois HAVILL v. WOODSTOCK SOAPSTONE COMPANY

[783 A.2d 423]

No. 99-516

September 18, 2001. Plaintiff Lois Havill appeals from a grant of summary judgment in favor of employer Woodstock Soapstone Company, Inc., on her breach of contract claim. Plaintiff contends that employer's personnel policies entitled her to continued employment absent just cause and that genuine issues of material fact exist regarding whether employer's reorganization was just cause for her termination. Employer cross-appeals from the court's denial of its motion to dismiss for lack of personal jurisdiction, arguing that its contacts with Vermont were insufficient to allow jurisdiction over it in a Vermont court. Concluding that employer had sufficient minimum contacts with Vermont, we affirm the denial of employer's motion to dismiss. We reverse the grant of summary judgment in favor of employer because genuine issues of material fact exist on whether the personnel policies modified the at-will relationship and

whether employer reorganized and eliminated plaintiff's position.

Employer manufactures wood burning stoves at its sole place of business in West Lebanon, New Hampshire. Plaintiff began working for employer on a part-time basis in 1982, when the company was incorporated in Vermont. Employer then moved its business to New Hampshire where it was incorporated in 1985. Plaintiff was terminated in 1987, and asked to return on a part-time basis in 1990. In 1994, she became a full-time customer service representative. Her duties included entering data, processing orders, preparing informational packets and videos, assisting customers on the phone and in the showroom, and general office work.

In 1994, employer distributed to plaintiff and all employees its Corporate Personnel Policies, which were "intended to encourage mutual understanding, respect and cooperation." The policies declare that "[t]he interest and loyalty of every employee is needed to maintain and improve our competitive market position, assure financial stability for the company, and job security for each employee." The policies provide that dealings with employees will be fair, open, and impartial, and that "[s]teady employment will be provided for the greatest number of employees for the longest possible period, depending on the amount and character of business which can be obtained." Also included are procedures for termination of employees and progressive discipline. Absent from the policies is any attempt by employer to limit or disclaim the creation of contractual liability arising therefrom.

On November 10, 1997, employer terminated plaintiff, claiming lack of work and that her position had been eliminated. Plaintiff filed a complaint alleging breach of her employment contract, and later amended the complaint to include counts for intentional and negligent misrepresentation. Before filing its

answer, employer filed a motion to dismiss for lack of personal jurisdiction. The court denied employer's motion, reasoning that employer had purposefully directed activity toward residents of Vermont in soliciting job applicants generally and plaintiff specifically, and that the litigation arose out of that activity. Employer moved the court to reconsider its decision or in the alternative for permission to appeal pursuant to V.R.A.P. 5(b)(1). Although modifying its decision to base it on undisputed facts, the court denied employer's motion to dismiss and motion to appeal.

After an opportunity for discovery, both parties moved for summary judgment on the breach of contract claim. The court granted employer's motion and denied plaintiff's, concluding that employer's personnel policies did not alter plaintiff's at-will employment status. The court also held that even if the policies did modify the employment agreement to require good cause for termination, the elimination of plaintiff's position in the company reorganization constituted good cause about which there were no disputed issues of fact. Plaintiff moved the court to reconsider its decision and to appeal, both of which the court denied. Employer filed a motion to dismiss the two remaining counts, intentional and negligent misrepresentation, which the court denied. The court granted plaintiff's motion to dismiss these two counts without prejudice. Plaintiff and employer both appeal.

## I. Employer's jurisdictional claim

Employer appeals the denial of its motion to dismiss for lack of personal jurisdiction. Vermont's long arm statute, 12 V.S.A. § 913(b), confers "jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Dall v. Kaylor*, 163 Vt. 274, 275, 658 A.2d 78, 79 (1995). Personal jurisdiction is permitted where the defendant

has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations and citation omitted). We have held that in determining whether minimum contacts are met the critical consideration is "whether the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 276, 658 A.2d at 79 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation omitted).

Employer contends that its contacts with Vermont are insufficient to establish the requisite minimum contacts for Vermont to exercise specific jurisdiction over a breach of contract claim arising out of plaintiff's employment at its New Hampshire place of business. See *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir.) ("Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum . . . ."), *cert. denied*, 519 U.S. 1006 (1996). We disagree. Plaintiff began her career with employer during its earlier incarnation as a Vermont corporation. After it was incorporated in New Hampshire, employer specifically recruited plaintiff by going to her Vermont home and asking that she return to work for the company. Plaintiff brought home work and was paid for additional work she performed at her Vermont home. In addition, the independent contractors now performing some of plaintiff's former duties are Vermont residents who complete these tasks from their Vermont homes. Employer solicits new hires by advertising in The Valley News, a paper in circulation in both Vermont and New Hampshire.

The fruit of this solicitation, employer's workforce, is comprised of both Vermont and New Hampshire residents. Having purposely solicited plaintiff, a Vermont resident, and recruited other Vermonters to work at its New Hampshire site or from their Vermont homes, it is not unreasonable for defendant to anticipate being called to answer a complaint brought by a Vermont resident in a Vermont court on the subject of her employment. See *Brown v. Cal Dykstra Equip. Co.*, 169 Vt. 636, 637, 740 A.2d 793, 795 (1999) (mem.) (Wisconsin crane company had sufficient minimum contacts with Vermont where it placed national advertisement and Vermont resident inspected and purchased crane in Wisconsin and accepted delivery in New Hampshire); *Dall*, 163 Vt. at 277, 658 A.2d at 80 (placing advertisement in national publication resulting in sale of horse to Vermont resident with delivery in Vermont was sufficient to establish minimum contacts). Because a Vermont court's assertion of jurisdiction over employer does not offend the traditional notions of fair play and substantial justice, we affirm the decision of the trial court denying employer's motion to dismiss.

## II. Plaintiff's contract claim

Turning to plaintiff's appeal, plaintiff first contends that the court erred in granting employer's motion for summary judgment on the ground that she was an at-will employee. Plaintiff argues that employer's personnel policies modified the at-will relationship between herself and employer. Employer contends that the law of New Hampshire should resolve this issue. The lower court found that there was no conflict and that the outcome would be the same in either jurisdiction. The court, therefore, relied on Vermont law in evaluating plaintiff's claim. See *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997) (under general conflict of law principles, where the laws of the two jurisdictions would produce the same result, the court should avoid the choice-of-law question); *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997) (where there is no conflict between the jurisdictions, a court should avoid the choice of law question and apply the law of the forum state). Although we agree that there is no conflict, we reach a different result than did the lower court regarding the ultimate outcome.

The law in both Vermont and New Hampshire is that employment contracts for an indefinite term are "at will." In both states, however, this is a rule of construction, and not of substantive law, which the parties can modify according to the usual rules of contract. See, e.g., *Taylor v. National Life Ins. Co.*, 161 Vt. 457, 462, 652 A.2d 466, 470 (1993); *Panto v. Moore Business Forms, Inc.*, 547 A.2d 260, 267 (N.H. 1988) (at-will status of an employment relationship is "one of prima facie construction," not substantive law). In New Hampshire, statements by an employer regarding benefits and incidents of employment "can be viewed objectively, as meant to be a subject of binding agreement." *Panto*, 547 A.2d at 264. An employee, who is otherwise free to leave her employment, who continues working furnishes the necessary consideration to modify the employment terms to include these benefits. See *id.* at 265; see also *Miesowicz v. Essex Group, Inc.*, No. Civ. 91-667-JD, 1994 WL 260645, at *3 (D.N.H. Apr. 12, 1994) (distinguishing employer's statements regarding incidental benefits of employment which can create an offer for unilateral contract formation from letter announcing employee's suspension and investigation procedure for infraction precipitating suspension, which do not modify her at-will status). An employer can avoid "contractual liability by clearly stating its intent not to be contractually bound by the terms of the promulgated policy."

*Butler v. Walker Power, Inc.*, 629 A.2d 91, 93 (N.H. 1993).

As it relates to the issues on appeal, Vermont law does not conflict with that of New Hampshire. We have held that provisions of a personnel manual inconsistent with the at-will relationship may be used as evidence that the employment contract requires good cause for termination. See, e.g., *Taylor*, 161 Vt. at 464, 652 A.2d at 471; *Haynes v. Golub Corp.*, 166 Vt. 228, 234, 692 A.2d 377, 380 (1997); *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 310, 683 A.2d 386, 389 (1996). Personnel policies that commit an employer to a progressive discipline system present a triable issue of fact on whether an employer may terminate an employee only for just cause. *Trombley v. Southwestern Vt. Med. Ctr.*, 169 Vt. 386, 392, 738 A.2d 103, 108 (1999). Policies that are definitive in form, communicated to employees, and evince an employer's intent to bind itself will be enforced. *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 20, 665 A.2d 580, 584 (1995).

Plaintiff has raised a genuine issue of fact that employer's personnel policies modified the at-will employment relationship between plaintiff and employer. The policies begin with a declaration designed to imbue employees with a sense of loyalty and job security. "The interest and loyalty of every employee is needed to maintain and improve our competitive market position, assure financial stability for the company, and job security for each employee." The policies contain a progressive discipline procedure detailing the consequences for violations of the personnel policies. In its "Termination of Employment" section, the policies provide that "[a]n area supervisor shall have the authority to dismiss an employee for just cause" and provides a nonexhaustive list of what infractions constitute just clause. At a minimum, the above provisions present a triable issue of fact on whether employer intended to bind itself to the terms of the personnel policies generally and the just cause termination procedure specifically.

The court granted summary judgment on the alternative ground that even if employer's corporate personnel policies modified the at-will employment relationship, the termination provision did not preclude employer from terminating plaintiff based on employer's elimination of her position as part of its reorganization. "[E]conomic circumstances that necessitate employer layoffs constitute good cause for termination." *Taylor*, 161 Vt. at 466, 652 A.2d at 472. Plaintiff contends that disputed questions of fact exist regarding whether economic necessity compelled the reorganization and whether the reorganization resulted in the elimination of her job.

An employer "cannot use the defense of economic necessity as a pretext 'for discharges which would otherwise be subject to a just cause attack by the employee.'" *Zoerb v. Chugach Elec. Ass'n*, 798 P.2d 1258, 1263 (Alaska 1990) (quoting *Ewers v. Stroh Brewery Co.*, 443 N.W.2d 504, 507 (Mich. Ct. App. 1989)). To defeat employer's summary judgment motion, plaintiff has the burden of presenting "some evidence that [her] termination was not for the reason specified by [employer]." *Taylor*, 161 Vt. at 469, 652 A.2d at 473. An employee creates a triable issue of material fact when she comes forward with evidence contradicting employer's claim. *Clutterham v. Coachman Indus., Inc.*, 215 Cal. Rptr. 795, 797 (Ct. App. 1985) (no triable issue of fact where employee failed to submit evidence to contradict employer's showing that termination was necessitated by market conditions and company reorganization); *McCart v. J. Walter Thompson USA, Inc.*, 469 N.W.2d 284, 287 (Mich. 1991) (plaintiff must raise a genuine issue of fact regarding the validity of employer's proof that adverse business conditions existed and that the elimination of plaintiff's position was necessitated by those conditions).

Plaintiff does not challenge employer's argument that market forces necessitated a reorganization. Instead, she offers contradictory evidence to employer's claim that a reorganization occurred that resulted in the elimination of her job. So limited, plaintiff's challenge does not require a court to perform the inappropriate function of second-guessing employer's decisions regarding whether and under what circumstances to reorganize or eliminate segments of its work force. See *Taylor*, 161 Vt. at 467, 652 A.2d at 472 (adopting rule that attempting to second-guess work force shifts is an inappropriate interference in managerial decisions).

By its termination notice, employer claims it laid off or terminated plaintiff "due to lack of work, and her position (office support w/emphasis on data entry/mail fulfillment) was eliminated." In support of its motion for summary judgment, employer added that plaintiff's primary responsibilities of telephone contact with customers, data entry, and mailing of company literature and videos have either been eliminated by the installation of a new phone system or outsourced to independent contractors. Review of the record reveals that in addition to the above functions, plaintiff also processed orders, assembled chimney packages, provided showroom tours, responded to customer inquiries in the showroom, and performed general office duties including filing. Regarding the new phone system, as an initial matter, it was not in operation until January 1999, over one year after plaintiff was fired. Once installed, although a new 800 number routed catalog calls to an off-site call center, the preexisting lines still generated calls directly to the West Lebanon office. Customer service representatives hired after plaintiff was terminated answer and process these calls. These replacement customer service representatives also perform other functions once performed by plaintiff, including telephone inquiries and order processing.

Of plaintiff's remaining duties, for five or six months after plaintiff was terminated, the data entry function was performed by other permanent staff or a temporary worker at the West Lebanon site. Although the data entry process was eventually upgraded, employer admits that plaintiff could perform this task. The data entry is now performed by a woman working as an independent contractor from her home in Sharon, Vermont. Employer still requires the assembling of mailing packets of company literature and brochures. This function is now performed by a worker at her Bridgewater Corners, Vermont home. At various time during her tenure with employer, plaintiff worked out of her home. Defendant has failed to offer any reason why plaintiff could not continue performing these tasks from her Vermont home. Affording plaintiff the benefit of all reasonable doubts and inferences, we conclude that a genuine issue of fact exists on employer's claim that plaintiff was laid off because there was no work for her to perform and that her position had been eliminated.

*The denial of employer's motion to dismiss for lack of personal jurisdiction is affirmed. The award of summary judgment to employer is reversed. The matter is remanded for such further proceedings as are consistent with this opinion.*