2005 UT App 92

**UINTAH BASIN MEDICAL CENTER, Plaintiff and Appellee,**

v.

**Leo W. HARDY, M.D., Defendant and Appellant.**

**Leo W. Hardy, M.D., Counterclaimant and Third-party Plaintiff,**

v.

**Uintah Basin Medical Center and Thomas J. Allred, M.D., Counterclaim Defendants and Third-party Defendants.**

No. 20030632–CA.

Court of Appeals of Utah.

March 3, 2005.

Jennifer L. Lange, John P. Harrington, Holland & Hart, Salt Lake City, for Appellant.

Blaine J. Benard, E. Blaine Rawson, Christine T. Greenwood, Holme Roberts & Owen, LLP, Salt Lake City, for Appellee.

Before Judges DAVIS, JACKSON, and THORNE.

## OPINION

JACKSON, Judge:

¶ 1 Dr. Leo W. Hardy appeals the trial court's order granting summary judgment in favor of Uintah Basin Medical Center (UBMC) in a suit regarding UBMC's termination of his employment agreement. We reverse and remand.

## BACKGROUND

¶ 2 Dr. Hardy is a board-certified pathologist. On November 29, 1994, he executed an employment agreement (the Agreement) to provide pathology services for UBMC, which is owned by Duchesne County and operated by the UBMC Board of Trustees (Board). Under the Agreement, which consists of only two pages taken almost verbatim from that of Dr. Hardy's predecessor, UBMC was to refer certain types of laboratory work to Dr. Hardy and pay a $400 monthly laboratory director's fee. In return, Dr. Hardy would work as the director of UBMC's laboratory and provide related services, which included weekly visits to the hospital. The Agreement does not include a fixed termination date; rather, it would "continue to bind parties ... until terminated after ninety (90) days written notice for just cause of termination by either party or by mutual consent of the parties to a shorter notice period." The Agreement does not define "just cause" or otherwise clarify what grounds would justify termination.

¶ 3 On July 29, 1996, UBMC sent Dr. Hardy notice of termination and later hired Dr. Thomas Allred in his place. On October 28, 1996, UBMC brought a suit for declaratory judgment to establish that its termination of the Agreement with Dr. Hardy was for

"just cause." Dr. Hardy filed a counterclaim alleging that the termination was without "just cause" and a breach of contract. Following discovery, the trial court granted UBMC's motion for summary judgment. The court determined that the Board in place at the time Dr. Hardy was hired had, during the course of Dr. Hardy's employment, been replaced by a successor Board and that the successor Board was no longer bound by the Agreement.

¶ 4 Dr. Hardy appealed the order to the Utah Supreme Court, which reversed. The court explained, in essence, that a contract is binding upon a successor governmental board as long the contract (1) involves a non governmental "proprietary power or function" and (2) is for "a reasonable duration." *Uintah Basin Med. Ctr. v. Hardy,* 2002 UT 92, ¶ 11, 54 P.3d 1165. The court determined that the Agreement involved a proprietary function and not a government power, *see id.* at ¶ 16, but remanded "to allow further development of the record" with respect to the reasonableness of the Agreement's duration, *id.* at ¶ 18. In gauging the reasonableness of the Agreement, the court instructed the trial court to consider how the "just cause" provision was understood by the parties. Specifically, the court suggested that the trial court should consider: (a) whether "the 'just cause' provision gives successor boards broad discretion to terminate Dr. Hardy," in which case the duration would likely be reasonable, or whether "the 'just cause' provision permitted termination only for deficient job performance," in which case the duration would likely be unreasonable; and (b) "[t]he extent to which the durational limitations in Dr. Hardy's contract conform to UBMC's usual practices in similar situations." *Id.*

¶ 5 On remand, UBMC again moved for summary judgment, arguing that there were no factual disputes and that the duration of Dr. Hardy's agreement was unreasonable as a matter of law. UBMC relied on statements in Dr. Hardy's deposition testimony that the Agreement could not be terminated except for deficient job performance or physical incapacity. UBMC also emphasized that it had only rarely used the "just cause" provision in its employment contracts with phy-

sicians. In response, Dr. Hardy submitted a post-remand affidavit explaining that he understood that "just cause" permitted UBMC boards to terminate the Agreement under a variety of circumstances, which included deficient performance, physical incapacity, and fundamental changes in the hospital's need for pathology services. Dr. Hardy also argued that although UBMC's use of the "just cause" provision had been erratic, UBMC had included the same clause in its 1992 contract with Dr. Joseph J. Sannella, the pathology physician immediately preceding him.

¶ 6 The trial court agreed with UBMC and granted its motion for summary judgment. In its June 19, 2003 ruling, the court explained that Dr. Hardy's understanding of the "just cause" provision as described in his original deposition was too limiting because "he could only be terminated for a few specific reasons, including death, physical incapacity, or if the hospital no longer required pathology services." The court went on to conclude that Dr. Hardy's post-remand affidavit clarifying his position was invalid under the "sham affidavit" rule because it contradicted his deposition testimony and served as an "attempt[] to re-draft his interpretation of the just cause clause to more similarly mirror the higher Court's opinion." Finally, the court also noted that the majority of UBMC's contracts contained a specific time limitation or a clause to terminate with proper notice. Thus, in the court's opinion, Dr. Hardy's contract indicated a significant departure from UBMC's normal practices.

¶ 7 Dr. Hardy appeals the trial court's order.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 On appeal, we must decide whether summary judgment was proper in this case. Specifically, we must determine (a) whether the trial court properly interpreted the "just cause" provision, (b) whether the Agreement is for a reasonable duration as a matter of law, and (c) whether any questions of fact justify remand to a finder of fact. We review a trial court's grant of summary judgment for correctness. *See Speros v. Fricke,* 2004 UT 69, ¶ 20, 98 P.3d 28. "In reviewing sum-

mary judgments, we view the facts and all reasonable inferences drawn from them in the light most favorable to the non-moving party," *id.*, and affirm if we conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Utah R. Civ. P. 56(c).

¶ 9 Similarly, "questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, which we review for correctness." *Fairbourn Commercial, Inc. v. American Hous. Partners, Inc.*, 2004 UT 54,¶ 6, 94 P.3d 292 (quotations and citation omitted).

## ANALYSIS

### I. Interpretation of the "Just Cause" Provision

¶ 10 The key question in this case is what the "just cause" provision in the Agreement means. Once this question is answered, we may gauge whether the Agreement was for a reasonable duration and also determine whether UBMC had just cause to terminate Dr. Hardy.

¶ 11 To interpret the "just cause" provision, the trial court relied primarily on extrinsic evidence, namely Dr. Hardy's deposition testimony regarding his understanding of the term. Although this use of extrinsic evidence was urged by our supreme court, *see Uintah Basin Med. Ctr. v. Hardy*, 2002 UT 92,¶ 18, 54 P.3d 1165, we note that such evidence must be considered only in the proper context and in accordance with well-settled principles of contract interpretation.

¶ 12 When parties to a contract disagree about the meaning of a provision, principles of contract interpretation require us to give effect to the meaning intended by the parties at the time they entered into the agreement. *See Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3,¶ 12, 40 P.3d 599 ("In interpreting a contract, the intentions of the parties are controlling."). A court may rely on extrinsic evidence of the parties' intent to interpret a provision, but it may do so only after it has determined that

the provision is ambiguous. *See, e.g., Nielsen v. Gold's Gym*, 2003 UT 37,¶ 6, 78 P.3d 600. Otherwise, when the agreement is unambiguous, the court must "determine[ ] the parties' intentions from the plain meaning of the contractual language as a matter of law." *Fairbourn*, 2004 UT 54 at ¶ 10, 94 P.3d 292 (quotations and citations omitted).

¶ 13 The question of whether a contract is ambiguous is decided by the court as a matter of law. *See Wagner v. Clifton*, 2002 UT 109,¶ 12, 62 P.3d 440. The court must first make a preliminary determination of ambiguity, and in doing so, may consider "[r]elevant, extrinsic evidence 'of the facts known to the parties at the time they entered the [contract].'" *Nielsen*, 2003 UT 37 at ¶ 7, 78 P.3d 600 (quoting *Yeargin, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 2001 UT 11,¶ 39, 20 P.3d 287) (second alteration in original). Generally, "[a] contract provision is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" *Fairbourn*, 2004 UT 54 at ¶ 10, 94 P.3d 292 (citation omitted). However, " '[a] contract provision is not necessarily ambiguous just because one party gives that provision a different meaning than another party does. To demonstrate ambiguity, the contrary positions of the parties must each be tenable.'" *Novell, Inc. v. Canopy Group, Inc.*, 2004 UT App 162,¶ 24, 92 P.3d 768 (quoting *R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1074 (Utah 1997)). Thus, a contract term may be imprecise, but it is not ambiguous if persons of competent skill and knowledge are capable of understanding its plain meaning. *See R & R Energies*, 936 P.2d at 1074.

¶ 14 Although both parties here have ascribed different meanings to the "just cause" provision, we cannot conclude that the term is ambiguous. UBMC has taken the position that it has "just cause" to terminate Dr. Hardy's employment when the business exigencies of the hospital and the interests of the patients warrant a change in personnel. In contrast, Dr. Hardy testified in his post-remand affidavit[1] that he understood the

---

1. The trial court determined that Dr. Hardy's

post-remand affidavit should be excluded under

"just cause" provision to allow UBMC to terminate the Agreement only under specific circumstances:

> In essence, UBMC would have just cause to terminate my Agreement if I failed to perform or something substantial changed as to the need of UBMC for pathology services (e.g., hospital closure) which may be caused by financial concerns. Those financial concerns, however, could not include merely getting a lower price for the pathology services or histology lab supervision.

Hardy also asserts that he understood "just cause" to imply that

> [i]f UBMC perceived a need for changes in scope or manner of the provided pathology services, I expected them to approach me regarding such a need, and if jointly agreed upon, I would have adjusted accordingly. If I could not accommodate these changes, then UBMC would be free to terminate the Agreement.

¶ 15 Dr. Hardy's interpretation is ultimately untenable for two reasons. First, the evidence on record does not indicate that the parties understood the "just cause" provision to have a unique meaning particular to the Agreement, much less the detailed meaning understood by Dr. Hardy. The parties have

stipulated that the Agreement is, for all practical purposes, identical to that of Dr. Hardy's predecessor, Dr. Joseph Sannella. The "just cause" termination provision was copied from the Sannella contract and included in the Agreement without any substantial negotiation. The parties did not incorporate other documents, such as the UBMC bylaws, to define when either party would have cause to terminate the Agreement. Thus, we must conclude that any particular meaning of "just cause" as understood or intended by Dr. Hardy is unique to himself and is, as he concedes in his brief, irrelevant to its interpretation.[2]

■■■ ¶ 16 Second, Dr. Hardy's interpretation of "just cause" is at odds with the ordinary meaning of the term. Unlike an at-will employment agreement, which allows an employer to discharge an employee for any, or no, reason, *see Hansen v. America Online, Inc.*, 2004 UT 62, ¶ 7, 96 P.3d 950, termination for just cause is widely understood to permit discharge only for "a fair and honest cause or reason, regulated by good faith ... as opposed to one that is trivial, capricious, unrelated to business needs or goals, or pretextual." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089, 1100 (2000) (quotations and citation omitted).[3]

---

the so-called "sham affidavit" rule. Although it does not affect our conclusion here, we disagree with the application of the rule in this case. Generally, a party may oppose a motion for summary judgment using affidavits, *see* Utah R. Civ. P. 56(c), unless the affidavit used contradicts the party's clear position taken in a previous deposition without explaining the discrepancy, *see Harnicher v. University of Utah Med. Ctr.*, 962 P.2d 67, 71 (Utah 1998). Here, Dr. Hardy did not take a clear position in his deposition, but only mentioned a few of the grounds justifying termination, including poor performance, death, blindness, or coma. Dr. Hardy's later affidavit testimony incorporates, clarifies, and expands his deposition testimony, but it does not contradict the prior deposition testimony and should be admissible.

2. In his brief, Dr. Hardy asserts that
[i]t is clear that it makes no difference what Dr. Hardy understands "just cause" to mean. The scope of the clause applies to UBMC's power and/or understanding of its power. What is important, is the UBMC Board of Trustees' intent in contracting with Dr. Hardy as to those circumstances under which UBMC might terminate Dr. Hardy's Agreement. The

focus should be on UBMC, not on what Dr. Hardy thought were the instances where he could be terminated.

3. *See also* 82 Am.Jur.2d *Wrongful Discharge* § 179 ("Generally, good cause connotes a fair and honest cause or reason for dismissal applied in good faith on the part of the employer."); *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412, 422 (1998) (defining "good cause" as "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual"); *Gaudio v. Griffin Health Servs. Corp.*, 249 Conn. 523, 733 A.2d 197, 208 (1999) (" '[J]ust cause' ... simply means that employers are forbidden ... to act arbitrarily or capriciously." (other quotations and citation omitted; second omission in original)); *Southwest Gas Corp. v. Vargas*, 111 Nev. 1064, 901 P.2d 693, 701 (1995) ("[W]e hold that discharge for 'just' or 'good' cause is one which is not for any arbitrary, capricious, or illegal reason...."); *Thompson v. Associated Potato Growers, Inc.*, 610 N.W.2d 53, 59 (N.D.2000) (quoting *Cotran, supra*); *Baldwin v. Sisters of*

This broad definition of just cause allows an employer to discharge an employee not only for misconduct or poor performance but also for other legitimate economic reasons.[4] Courts have recognized that " '[i]n deciding whether [just] cause exists, there must be a balance between the employer's interest in operating its business efficiently and profitably and the employee's interest in continued employment.... Care must be exercised so as not to interfere with the employer's legitimate exercise of managerial discretion.' " *Cotran v. Rollins Hudig Hall Int'l, Inc.,* 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412, 417 (1998) (citations omitted); *see also* 82 Am.Jur.2d *Wrongful Discharge* § 181 ("What constitutes good cause for dismissal of an employee is generally a matter for an employer's good business judgment....").

¶ 17 In sum, absent evidence that the parties intended a meaning of "just cause" unique to this particular agreement, we must conclude that the parties intended the term to have its ordinary meaning. Accordingly, we hold that the "just cause" provision is unambiguous and is ordinarily understood to provide employers with power to terminate an employee for legitimate business reasons and in the interest of improving client services as long as the justification is not a mere pretext for a capricious, bad faith, or illegal termination.

## II. Reasonable Duration

¶ 18 The trial court determined that the Agreement was void as a matter of law because its duration imposed an unreasonable restraint on the Board as a governmental body. However, having determined that the "just cause" permits termination for legitimate business reasons, we must also conclude that the Agreement was for a reasonable duration. As the supreme court indicated, "the reasonableness of the contract's duration depends in large part on the amount of discretion this provision gives to successor boards." *Uintah Basin Med. Ctr. v. Hardy,* 2002 UT 92, ¶ 18, 54 P.3d 1165. We also note that with regard to the reasonableness of a government contract, the supreme court in the past has adopted a relatively low threshold:

> If it be made to appear that at the time the contract was entered into, it was fair and just and reasonable, and prompted by the necessities of the situation, or was in its nature advantageous to the [governing body], then such contract will not be construed as an unreasonable restraint upon the powers of succeeding boards.

*Bair v. Layton City Corp.,* 6 Utah 2d 138, 307 P.2d 895, 902–03 (Utah 1957) (quotations and citation omitted); *see also* Eugene McQuillin, *The Law of Municipal Corporations* § 29.101 (3d ed. 1999) ("[T]he general rule seems to be that a contract of employment extending beyond the term of the office of the [governing body], is, if made in good faith, ordinarily a valid contract.").

¶ 19 Here, the contract with Dr. Hardy did not impose a significant restraint on the Board. The "just cause" term provided the board with discretion to terminate Dr. Hardy for good faith business reasons and was, therefore, not binding in perpetuity. Moreover, although "just cause" term appeared in only a few of UBMC contracts, it was fair and beneficial to both parties at the time they entered into the Agreement because, on one hand, it provided the Board with considerable freedom to change the employment decisions of the predecessor boards, and, on the other hand, it guaranteed Dr. Hardy good faith employment. We cannot, therefore, conclude the Agreement imposed an unreasonable duration on the Board.

---

*Providence in Wash., Inc.,* 112 Wash.2d 127, 769 P.2d 298, 304 (1989) ("We hold 'just cause' is fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. We further hold a discharge for 'just cause' is one which is not for any arbitrary, capricious, or illegal reason...."); *Life Care Ctrs. of Am. v. Dexter,* 65 P.3d 385, 392 (Wyo. 2003) (quoting *Cotran, supra*).

4. *See also Zoerb v. Chugach Elec. Ass'n,* 798 P.2d 1258, 1262–63 (Alaska 1990) ("A reduction in work force compelled by legitimate and sufficient business reasons may constitute 'good cause' to terminate an employee.") (citing cases from several jurisdictions); *Havill v. Woodstock Soapstone Co.,* 172 Vt. 625, 783 A.2d 423, 428 (2001) ("Economic circumstances that necessitate employer layoffs constitute good cause for termination." (quotations, citation, and alteration omitted)).

### III. UBMC's Just Cause to Terminate

■ ¶ 20 The only remaining issue is whether the Board discharged Dr. Hardy for just cause. Because the trial court did not reach this issue in its summary judgment ruling, we remand for the trial court to determine whether the Board terminated Dr. Hardy for legitimate business reasons or whether the termination was capricious, in bad faith, or illegal.[5]

■ ¶ 21 However, we address here the question of what an employer must show to prove it terminated an employee for just cause, a matter of first impression for Utah courts. There appear to be three different approaches to this question. Some courts seem to give deference to the justifications stated by the employer. *See e.g., Gaudio v. Griffin Health Servs. Corp.*, 249 Conn. 523, 733 A.2d 197, 208 (1999) ("[A]n employer who wishes to terminate an employee for cause must do nothing more rigorous than 'proffer a proper reason for dismissal.' ") (citation omitted). A few other courts have taken the opposite approach and required the employer to prove that the conditions necessitating termination actually existed. *See, e.g., Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 292 N.W.2d 880, 895 (1980) ("[W]here an employer has agreed to discharge an employee for cause only, its declaration that the employee was discharged for unsatisfactory work is subject to judicial review. The jury as trier of fact decides whether the employee was, in fact, discharged for unsatisfactory work.").

¶ 22 A far greater number of states have adopted a more balanced approach that requires an employer to justify termination with an objective good faith reason supported by facts reasonably believed to be true by the employer. *See, e.g., Towson Univ. v. Conte*, 384 Md. 68, 862 A.2d 941, 950–51, 954 (2004) ("[I]n the just cause employment context, a jury's role is to determine the objective reasonableness of the em-

ployer's decision to discharge, which means that the employer act in objective good faith and base its decision on a reasoned conclusion and facts reasonably believed to be true by the employer." (emphasis omitted)). These courts recognize that an employer's justification for discharging an employee should not be taken at face value but also recognize that a judge or jury should not be called upon to second-guess an employer's business decisions. *See e.g., Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412, 417 (1998) (" 'Although the jury must assess the legitimacy of the employer's decision to discharge, it should not be thrust into a managerial role.' " (citation and emphasis omitted)).

¶ 23 We agree with the majority of courts and adopt the objective reasonableness approach. Accordingly, in order to establish just cause on remand, UBMC need not prove that the Board's assumptions in terminating Dr. Hardy were true or that the benefits it expected were actually realized. Rather, UBMC need only show that the Board acted in good faith by adequately considering the facts it reasonably believed to be true at the time it made the decision.

### CONCLUSION

¶ 24 We reverse the trial court's order granting summary judgement to UBMC and remand for further proceedings consistent with this opinion.

¶ 25 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.

---

**5.** We note that both parties have addressed this issue at length in their pleadings, memoranda, and briefs. Our search of the trial record does not indicate that Dr. Hardy has, in the course of these proceedings, identified any acts, or even a motive, to show that the Board's decision was compelled by non-business reasons constituting caprice, bad faith, or illegality. Nonetheless, we remand the question to allow the trial court to properly determine what further proceedings may be necessary.