2006 UT App 266

**Scott A. LUNCEFORD and Deborah Lunceford Harker, Plaintiffs and Appellants,**

v.

**Mona Vincent LUNCEFORD, an individual; and M. Dayle Jeffs, in his capacity as Trustee of the Clyde M. Lunceford Trust, Defendants and Appellees.**

No. 20050027–CA.

Court of Appeals of Utah.

June 29, 2006.

Ryan M. Harris, Jeffrey Weston Shields, and Andrew H. Stone, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellants.

Benson L. Hathaway, Alexander Dushku, and Karina Landward, Kirton & McConkie, Salt Lake City, for Appellees.

Before Judges BILLINGS, McHUGH, and THORNE, Jr.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiffs Scott A. Lunceford (Son) and Deborah Lunceford Harker (Daughter) (collectively, Children) appeal the district court's grant of Defendant Mona Vincent Lunceford's (Wife) rule 12(b)(6) motion to dismiss. *See* Utah R. Civ. P. 12(b)(6). Children assert that the district court erred in granting Wife's motion to dismiss because the settlement agreement between the parties was ambiguous and did not bar Children's claims. We reverse and remand.

## BACKGROUND

¶ 2 In reviewing whether a district court properly granted a rule 12(b)(6) motion to dismiss, "we accept the factual allegations in the complaint as true and interpret those facts and all inferences drawn from them in the light most favorable to the ... non-moving party." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 9, 104 P.3d 1226. We recite the facts in this case accordingly.

¶ 3 Clyde M. Lunceford (Father) was the husband of Wife and the father, by a prior marriage, of Children. On July 21, 2000, Father established the Clyde M. Lunceford Trust (the Trust) and appointed Son as trustee of the Trust and Daughter as successor trustee. The Trust assets include a piece of real property in Utah County, Utah (the Utah County Residence), and a condominium located at the Coronado Shores project in San Diego, California (the Coronado Condominium).

¶ 4 According to the terms of the Trust, the trustee was to provide for Father's benefit, welfare, happiness, and comfort with the Trust assets during Father's lifetime. Upon Father's death, the Trust assets were to be divided among Wife and Children as follows: Wife was to have a life estate in the Coronado Condominium and have the benefit of the net income therefrom during her natural life. The remainder of the Trust assets was to be distributed to Children.

¶ 5 In December 2000, Father executed an amendment to the Trust (the First Amendment). In the First Amendment, Father appointed himself as trustee and Wife as successor trustee. However, in August 2001, Father executed a second amendment to the Trust (the Second Amendment) and appointed M. Dayle Jeffs, Father's attorney, as trustee. Father did not appoint a successor trustee in the Second Amendment, but instead restored the Trust "as it was originally at the time of creation of the Trust."

¶ 6 During the latter part of 2001, certain intrafamily disputes arose between Father, Wife, and Children concerning some family business entities, including a dispute about a limited liability company created to hold Lunceford family assets. As a result of these family disputes and in an attempt to resolve them, Father, Wife, and Children entered into settlement negotiations. The result of those negotiations was a Settlement Agreement and Mutual Release (the Settlement Agreement), which was executed effective January 22, 2002.

¶ 7 Father died in February 2003. Children claim that after his death Wife improperly installed herself as trustee of the Trust and is now engaging in self-dealing. In an attempt to assert their rights under the

Trust, Children filed a complaint in district court. Wife then filed a rule 12(b)(6) motion to dismiss, asserting that Children waived all claims against her and all rights to the Trust under the Settlement Agreement. The district court granted Wife's motion to dismiss. Children timely appeal.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 On appeal, Children assert that the district court erred when it granted Wife's rule 12(b)(6) motion to dismiss. *See* Utah R. Civ. P. 12(b)(6). "A trial court's decision granting a rule 12(b)(6) motion to dismiss a complaint ... is a question of law that we review for correctness, giving no deference to the trial court's ruling." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 9, 104 P.3d 1226.

¶ 9 Next, Children argue that the district court erred in refusing to reconsider its ruling granting Wife's motion to dismiss. Because we conclude that the district court erred in initially granting Wife's motion to dismiss, it is unnecessary for us to address this issue.

■ ¶ 10 Finally, Children claim that the district court erred in awarding Wife the attorney fees she incurred in connection with her motion to dismiss. The standard of review for the threshold determination of Wife's entitlement to attorney fees is dependent on the court's underlying decision regarding her motion to dismiss. However, the district court's determination as to the identity of the prevailing party is reviewed for abuse of discretion. *See R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119.

## ANALYSIS

¶ 11 Children's complaint essentially petitions the district court to construe their rights under the Trust. The complaint asserts claims against Wife for damages, injunctive relief, and declaratory relief. In opposition to Children's complaint, Wife asserts that the Settlement Agreement bars all claims that Children have against her and waives any interest that Children might have in the Trust. To determine whether the district court erred in granting Wife's motion to dismiss, we must determine whether the Settlement Agreement unambiguously bars Children's claims. We conclude that it does not.

¶ 12 Under Utah law, the basic rule of contract interpretation is that "[i]n interpreting a contract, the intentions of the parties are controlling." *Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599; *Novell, Inc. v. Canopy Group, Inc.*, 2004 UT App 162, ¶ 20, 92 P.3d 768. Essentially, we are required "to give effect to the meaning intended by the parties at the time they entered into the agreement." *Uintah Basin Med. Ctr. v. Hardy*, 2005 UT App 92, ¶ 12, 110 P.3d 168.

■ ¶ 13 "The question of whether a contract is ambiguous is decided by the court as a matter of law." *Id.* at ¶ 13. "When determining whether a contract is ambiguous, any relevant evidence must be considered." *Ward v. Intermountain Farmers Assoc.*, 907 P.2d 264, 268 (Utah 1995). "Otherwise, the determination of ambiguity is inherently one-sided, namely, it is based solely on the 'extrinsic evidence of the judge's own linguistic education and experience.'" *Id.* (quoting *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 643 (1968)) (additional quotations and citation omitted). And although "the terms of an instrument may seem clear to a particular reader—including a judge—this does not rule out the possibility that the parties chose the language of the agreement to express a different meaning." *Id.* In contrast, when a trial court considers all credible evidence, "'the court can "place itself in the same situation in which the parties found themselves at the time of contracting."'" *Id.* (quoting *G.W. Thomas Drayage*, 69 Cal. Rptr. 561, 442 P.2d at 645) (additional citation omitted).

■ ¶ 14 In "consider[ation of] any credible evidence offered to show the parties' intention," *id.*, "[a]n ambiguity exists where the language [of the contract] is reasonably capable of being understood in more than one sense," *Central Fla. Invs.*, 2002 UT 3 at ¶ 12, 40 P.3d 599 (quotations and citation

omitted). This does not mean, however, that contract provisions are necessarily ambiguous just because two parties ascribe different meanings to those provisions. *See Uintah Basin Med. Ctr.*, 2005 UT App 92 at ¶ 13, 110 P.3d 168. Instead, " '[t]o demonstrate ambiguity, the contrary positions of the parties must each be tenable.' " *Id.* (quoting *Novell*, 2004 UT App 162 at ¶ 24, 92 P.3d 768). Thus, where "the language of the agreement is reasonably susceptible to [the parties'] contended interpretation[s], we conclude [the agreement] ... is ambiguous." *Ward*, 907 P.2d at 269.

¶ 15 Moreover, in evaluating ambiguity within the plain meaning of a contract, a court will "attempt to harmonize all of the contract's provisions and all of its terms." *Central Fla. Invs.*, 2002 UT 3 at ¶ 12, 40 P.3d 599. If, however, a "court cannot resolve the problem by harmonizing ambiguous or conflicting terms, as a matter of law, then the court may properly conclude there is an ambiguity." *Gillmor v. Macey*, 2005 UT App 351, ¶ 19 n. 8, 121 P.3d 57, *cert denied*, 126 P.3d 772 (Utah 2005).

¶ 16 In this case, Children argue that, at a minimum, the Settlement Agreement is ambiguous and that their complaint cannot be dismissed pursuant to a rule 12(b)(6) motion.[1] At the district court level, both Children and Wife offered reasonable interpretations of the parties' intentions upon entering into the Settlement Agreement. Children assert that the Settlement Agreement does not limit Father's right to bequeath any of his assets, including the Trust property, to any person that he desires. Moreover, the Settlement Agreement does not limit Children's rights to receive such property by bequest through the Trust. Conversely, Wife maintains that the Settlement Agreement does, in fact, cut off Children's asserted rights to the Trust and that Children, by entering into the Settlement Agreement, waived any and all interests they may have had in the Trust property.

¶ 17 The language of the Settlement Agreement itself supports these two tenable interpretations of the parties' intentions upon entering into the Settlement Agreement. On the one hand, the Settlement Agreement states that "the Trust beneficiaries are as stated in the Trust, as amended."[2] Additionally, the Settlement Agreement states that it "shall not, in any manner, restrict, impair, or limit [Father's] right or ability to distribute any of his property by lifetime transfer, will[,] or other testamentary disposition, or in any other manner, to any person or persons of his choosing." On the other hand, however, the Settlement Agreement states that Children agree to waive their claims against Father and Wife "of entitlement to present or immediate testamentary interests in the Coronado Condominium and the [Utah County] Residence."[3] The Settlement Agreement also states that Children "release any claim, rights[,] or title in and to the [Utah County] Residence and the Coronado Condominium." These provisions of the Settlement Agreement are at odds with each other. Because we must interpret the entire Settlement Agreement "with a view toward giving effect to all [of the contract's provisions] and ignoring none," *Plateau Mining Co. v. Utah Div. of State Lands*, 802 P.2d 720, 725 (Utah 1990), we cannot harmonize these conflicting provisions, and we therefore conclude that the Settlement Agreement is ambiguous, *see Gillmor*, 2005 UT App 351 at ¶ 19 n. 8, 121 P.3d 57.

¶ 18 Children and Wife have offered two reasonable interpretations of the Settlement Agreement. Moreover, the provisions within the four corners of the Settlement Agreement are conflicting and cannot be harmonized. Therefore, we conclude that, at a minimum, the Settlement Agreement is ambiguous and Children's complaint should not

1. Wife argues that Children have not preserved this argument for appeal because, instead of arguing below that the Settlement Agreement is ambiguous, they simply offered their perspective as to the correct interpretation of the agreement. Because both parties offered differing reasonable interpretations of the Settlement Agreement, Children, by definition, argued that the Settlement Agreement was ambiguous and thus sufficiently preserved this argument for appeal.

2. Children are the "[T]rust beneficiaries" referred to in this provision.

3. Indeed, the use of the adjectives "present or immediate" to describe "testamentary interests" raises further ambiguity as to whether the Children waived their future, remainder interest in the revocable Trust.

have been dismissed pursuant to a rule 12(b)(6) motion. Instead, the parties should have been allowed to pursue discovery to determine the meaning of the Settlement Agreement and the parties' intentions at the time they entered into the Settlement Agreement.

¶ 19 Children also assert that the district court erred in awarding attorney fees to Wife. Our conclusion that the district court erred when it dismissed the Children's complaint pursuant to Wife's rule 12(b)(6) motion makes the award of attorney fees to Wife improper. Therefore, the district court's award of attorney fees to Wife must be reversed, as she is no longer the prevailing party.

## CONCLUSION

¶ 20 Because we conclude that the Settlement Agreement is ambiguous, it cannot be interpreted as a matter of law in the context of a rule 12(b)(6) motion to dismiss. Therefore, we hold that the district court erred in granting Wife's motion to dismiss and in awarding her attorney fees.[4] Accordingly, we reverse and remand to the district court for proceedings consistent with this opinion.

¶ 21 WE CONCUR: CAROLYN B. McHUGH and WILLIAM A. THORNE JR., Judges.

4. Wife argues that Children's complaint asserts various claims that were also dismissed pursuant to Wife's rule 12(b)(6) motion to dismiss and that because Children only appeal the issue of whether the Settlement Agreement bars their claims, Children have effectively waived all other claims they assert in their complaint. And because Wife prevailed on these other claims, Wife argues that she should at least be awarded attorney fees for the claims that Children have waived on appeal. We find this argument unpersuasive. The district court's sole ground for dismissing Children's complaint is that it determined the Children waived all claims against Wife in the Settlement Agreement. Therefore, the only issue the Children properly argue on appeal is the issue actually decided by the district court. By reversing the district court's dismissal of Children's complaint and its award of attorney fees, we reinstate Children's complaint in its entirety.