2008 UT 15

**UINTAH BASIN MEDICAL CENTER,**
**Plaintiff and Appellee,**

v.

**Leo W. HARDY, M.D., Defendant**
**and Appellant.**

**Leo W. Hardy, M.D., Counterclaimant**
**and Third–Party Plaintiff,**

v.

**Uintah Basin Medical Center and Thomas J. Allred, M.D., Counterclaim Defendants and Third–Party Defendants.**

**No. 20050951.**

Supreme Court of Utah.

Feb. 22, 2008.

Blaine J. Benard, E. Blaine Rawson, J. Andrew Sjoblom, Salt Lake City, for plaintiff.

John P. Harrington, Jennifer L. Lange, Salt Lake City for defendant.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This case comes before us on appeal from the district court's grant of summary judgment. Defendant Dr. Leo W. Hardy argues that the district court erred when it held that Uintah Basin Medical Center ("UBMC") had just cause to terminate his contract. Because we agree, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Originating more than ten years ago and now on its third appeal, this case arose from a 1994 agreement for professional services (the "Agreement") between UBMC and Dr. Hardy, a pathologist. Pursuant to the Agreement, Dr. Hardy visited UBMC once a week for approximately two hours and received $400 per month as compensation. The Agreement did not state a termination date but provided that either party could terminate the Agreement for just cause following ninety days' notice.

¶ 3 On July 18, 1996, the UBMC board of trustees (the "Board") voted to terminate the Agreement and to invite Dr. Thomas Allred, another physician, to join its medical staff as both a pathologist and an emergency room physician. Pursuant to the Agreement, the Board gave Dr. Hardy ninety days' notice of termination.

¶ 4 In October 1996, UBMC filed this action seeking a declaratory judgment that it had just cause to terminate the Agreement. Dr. Hardy counterclaimed, alleging breach of contract. The district court granted sum-

mary judgment to UBMC on the basis that the Agreement was voidable because it improperly bound successor Boards.

¶ 5 Dr. Hardy appealed the summary judgment to this court. On August 30, 2002, we held that the Agreement was enforceable against successor UBMC Boards if it was of a reasonable duration. *Uintah Basin Med. Ctr. v. Hardy*, 2002 UT 92, ¶ 17, 54 P.3d 1165. We remanded to the district court for a determination of whether the Agreement's duration was reasonable. *Id.* ¶ 18. On remand, the district court granted UBMC's motion for summary judgment, holding that the Agreement was unenforceable because it unduly limited the Board's discretion and was therefore unreasonable in its duration.

¶ 6 Dr. Hardy appealed the second order granting summary judgment in UBMC's favor to the court of appeals. The court of appeals concluded that the Agreement was for a reasonable duration because it allowed the Board to terminate the Agreement for legitimate business reasons. *Uintah Basin Med. Ctr. v. Hardy*, 2005 UT App 92, ¶¶ 18–19, 110 P.3d 168. The court of appeals concluded that "[t]he only remaining issue [was] whether the Board discharged Dr. Hardy for just cause." *Id.* ¶ 20. Because the district court's summary judgment order did not address the just cause question, the court of appeals remanded the case to the district court "to determine whether the Board terminated Dr. Hardy for legitimate business reasons or whether the termination was capricious, in bad faith, or illegal." *Id.*

¶ 7 On March 22, 2005, the district court ordered the parties to prepare and submit briefs on the just cause issue. UBMC filed a brief entitled "Remand and Summary Judgment Brief," requesting judgment in its favor, and Dr. Hardy filed a responsive brief. Following oral argument, the district court issued a ruling and order granting summary judgment to UBMC. The district court, "upon reviewing the record in this case ... found nothing to indicate or suggest that the [B]oard's decision to terminate the Agreement was compelled by non-business reasons constituting bad faith, caprice, or illegality." Dr. Hardy appeals the district court's grant of summary judgment to this court. In his appeal, Dr. Hardy also challenges the jurisdiction of the district court and whether the district court properly considered and ruled upon UBMC's summary judgment motion, given that it had ordered the parties to brief only the just cause issue. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## ANALYSIS

### I. THE DISTRICT COURT PROPERLY EXERCISED JURISDICTION OVER THE CASE

¶ 8 The district court ordered the parties to file briefs regarding the just cause issue on March 22, 2005. Dr. Hardy argues that the district court did not have jurisdiction to order the parties to undertake any action until May 3, 2005, the date of the court of appeals' remittitur of the case. Because the district court conducted the hearing and entered its summary judgment order subsequent to the remittitur, we find that jurisdiction was proper and the arguably premature order requiring briefing was of no significance.

### II. THE DISTRICT COURT PROPERLY CONSIDERED AND RULED UPON UBMC'S MOTION FOR SUMMARY JUDGMENT

¶ 9 Dr. Hardy argues that the district court erred by hearing and considering UBMC's motion for summary judgment when the court's order requested merely "a brief on the remaining issue." A court's interpretation of its own order is reviewed for clear abuse of discretion and we afford the district court great deference. *See Enodis Corp. v. Employers Ins. of Wausau (In re Consol. Indus. Corp.)*, 360 F.3d 712, 716 (7th Cir.2004).

¶ 10 The title of UBMC's motion to the district court, "UBMC's Remand and Summary Judgment Brief," clearly put Dr. Hardy on notice that UBMC was requesting summary judgment. Dr. Hardy did not file an objection to UBMC's motion but rather opposed it on the merits. During the August 4, 2005 hearing, UBMC stated, "[W]e're here

today stating that it's time to dismiss this case." Dr. Hardy's counsel still did not object to the district court's consideration of UBMC's summary judgment motion. Dr. Hardy's counsel responded, "I think that the court should be apprehensive about ruling as a matter of law when we are contesting various facts." We conclude that the district court did not abuse its discretion when it considered and ruled upon UBMC's motion for summary judgment.

## III. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE DR. HARDY RAISED A DISPUTED ISSUE OF MATERIAL FACT WITH RESPECT TO WHETHER UBMC HAD JUST CAUSE FOR TERMINATING THE AGREEMENT

■ ¶ 11 We review the district court's legal conclusions resulting in summary judgment for correctness. *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1111–12 (Utah 1991). Our task is to determine whether the undisputed facts in the record demonstrate just cause for UBMC to terminate the Agreement.

■ ¶ 12 The term "just cause" connotes a "fair and honest cause or reason, regulated by good faith on the part of the party exercising the power." *Pugh v. See's Candies, Inc.,* 203 Cal.App.3d 743, 250 Cal.Rptr. 195, 200–01 (1988) (internal quotation marks and citation omitted); *R.J. Cardinal Co. v. Ritchie,* 218 Cal.App.2d 124, 32 Cal.Rptr. 545, 558 (1963). Additionally, a just cause reason for termination is not "trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual." *Cotran v. Rollins Hudig Hall Int'l, Inc.,* 17 Cal.4th 93, 69 Cal. Rptr.2d 900, 948 P.2d 412, 422 (1998) (citation omitted).

■ ¶ 13 The interpretation of a contractual just cause provision requires the court to strike a careful balance. On one hand, the just cause standard cannot be so stringent as to make the duration of the contract unreasonable. *Uintah Basin Med. Ctr. v. Hardy,* 2002 UT 92, ¶ 18, 54 P.3d 1165. For example, even though unsatisfactory job performance would most likely establish just cause,

satisfactory job performance alone does not establish the lack of just cause. On the other hand, the just cause standard cannot be so lax as to render the just cause provision meaningless.

■ ¶ 14 The requirement that a contract be terminated only for just cause protects the parties to the contract from termination for reasons that are trivial, arbitrary, capricious, pretextual, or unrelated to business needs. *Cotran,* 69 Cal.Rptr.2d 900, 948 P.2d at 422. Accordingly, *just* cause cannot be synonymous with *any* cause or *no* cause. Indeed, if just cause is met when a party terminates a contract without a preexisting reason and only later conceives of a justification for the termination, the line between just cause termination and termination at will becomes indistinct for all practical purposes.

### A. UBMC's Evidence of Good Faith

¶ 15 In arguing for summary judgment, UBMC relied on a number of facts, established variously by affidavit, deposition testimony, and relevant documents. UBMC argued that these facts establish a good faith basis for the termination of its Agreement with Dr. Hardy. Specifically, UBMC asserted the following reasons for terminating the Agreement: (1) Dr. Allred would be at the hospital full time; (2) Dr. Allred would work both as a pathologist and as an emergency room physician; (3) Dr. Allred would bring about $70,000 worth of equipment with him to install in UBMC facilities; (4) Dr. Wayne Stewart, a UBMC Board member, believed that there was a need for additional pathology services at UBMC; (5) Brad LeBaron, hospital administrator, explained that UBMC was constantly recruiting physicians for the emergency room; (6) the Board determined that the addition of Dr. Allred to its medical staff would benefit Duchesne County and the surrounding community because he would become a full-time resident and member of that community; and (7) UBMC investigated Dr. Allred's background, and its check of his references produced favorable responses.

■ ¶ 16 Summary judgment is appropriate upon a showing "that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). The party moving for summary judgment has the burden of presenting evidence that no genuine issue of material fact exists. *Id.* 56(e). Once the moving party has challenged the nonmoving party's case on this basis, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Id.* Because UBMC came forward with evidence of good cause to terminate the Agreement, the burden then shifted to Dr. Hardy to show that the reasons advanced by UBMC were trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual.

### B. Dr. Hardy's Evidence of Pretext

█ ¶ 17 To meet his burden of showing that the reasons advanced by UBMC were arbitrary, capricious, or pretextual, Dr. Hardy identified what he characterizes as deficiencies in UBMC's termination process. He claims that one of the possible inferences to be drawn from these deficiencies is pretext. We agree. Because pretext is one of the logical inferences arising from the facts raised by Dr. Hardy, we conclude that he has raised a genuine issue as to whether UBMC terminated the Agreement for just cause.

¶ 18 The summary judgment standard recognizes that the nonmoving party is entitled to all inferences arising from the facts of record. *See Hermansen v. Tasulis,* 2002 UT 52, ¶ 10, 48 P.3d 235. This case turns on such inferences because even though neither party disputes the facts surrounding the termination, both parties heartily dispute whether the facts support UBMC's position that it terminated Dr. Hardy for just cause.

█ ¶ 19 A district court is precluded from granting summary judgment "if the facts shown by the evidence on a summary judgment motion support more than one plausible but conflicting inference on a pivotal issue in the case ... particularly if the issue turns on credibility or if the inferences depend upon subjective feelings or *intent.*" 73 Am.Jur.2d *Summary Judgment* § 46 (2001) (emphasis added); *see also Romero v. Union Pac. R.R.,* 615 F.2d 1303, 1307 (10th Cir.1980). As the nonmoving party, Dr. Hardy "is entitled to the benefit of having the court consider all of the facts presented, and every inference fairly arising therefrom in the light most favorable to him." *Morris v. Farnsworth Motel,* 123 Utah 289, 259 P.2d 297, 298 (1953).

¶ 20 We conclude that the inferences on which Dr. Hardy relied in opposing summary judgment are reasonable, fairly arise from the facts in the record, and do raise a genuine issue of fact appropriate for jury resolution. That genuine issue is whether the business reasons offered by UBMC for Dr. Hardy's termination were pretextual. UBMC claims that it hired Dr. Hardy's replacement because he would be on-site at the facility and would bring with him some $70,000 worth of equipment. However, Dr. Hardy points to additional facts that could convince a reasonable jury that these business justifications were merely pretextual.

¶ 21 First, UBMC did not give Dr. Hardy any contemporaneous reason for the termination of his Agreement. UBMC simply thanked Dr. Hardy for his service and told him that he had been replaced. And UBMC's administrator, Brad LeBaron, admitted in his deposition that he told Dr. Hardy after the termination that he would need to look and see what kind of potential issues could be raised to defend UBMC's decision. In addition, even though UBMC now relies on its desire for an on-site pathologist as a justification for the termination decision, this desire was never expressed to Dr. Hardy before his Agreement was terminated, and Dr. Hardy was given no opportunity to cure or address any demonstrated need or desire of UBMC for an on-site pathologist. Indeed, UBMC undertook no investigation into the actual need or the financial impact of hiring an on-site pathologist before it terminated Dr. Hardy's Agreement. This lack of investigation before the termination suggests that UBMC's stated need for an on-site pathologist was merely pretextual.

¶ 22 The facts also establish that UBMC failed to conduct a comprehensive investigation of Dr. Allred prior to hiring him and did not discover that Dr. Allred had a pending malpractice claim against him, again suggest-

ing that UBMC's stated need for an on-site pathologist was pretextual. Finally, UBMC did not terminate Dr. Hardy for poor performance, misconduct, breach of the Agreement, or failure to fulfill his obligations.

¶ 23 Taken together and construed in the light most favorable to Dr. Hardy, these facts give rise to the reasonable inference that UBMC's stated business reasons for terminating Dr. Hardy's Agreement were pretextual. As a result, a reasonable jury could find that UBMC terminated the Agreement without just cause, and summary judgment was therefore improper on Dr. Hardy's claim for breach.[1]

## CONCLUSION

¶ 24 In summary, we conclude that the district court properly exercised jurisdiction over the case and that it properly considered and ruled upon UBMC's motion for summary judgment. The district court erred, however, in granting summary judgment in favor of UBMC on Dr. Hardy's claim for breach of the Agreement. The reasonable inferences arising from the facts put forward by Dr. Hardy provide a sufficient basis on which a jury could conclude that UBMC lacked just cause for terminating the Agreement. We accordingly reverse the summary judgment and remand this matter to the district court for trial on Dr. Hardy's claim for breach of the Agreement.

¶ 25 Justice DURRANT and Justice NEHRING concur in Justice PARRISH's opinion.

DURHAM, Chief Justice, dissenting:

¶ 26 I respectfully dissent. I do not agree with the majority's conclusion that Dr. Hardy met his burden of showing that the reasons advanced by UBMC for Dr. Hardy's termination were arbitrary, capricious, or pretextual.

¶ 27 Dr. Hardy attempted to meet his burden by identifying what he characterized as deficiencies in UBMC's termination process. For example, Dr. Hardy noted that UBMC's chief financial officer testified in a deposition that, at the time of Dr. Hardy's termination, UBMC had not conducted an investigation into the financial impact of hiring Dr. Allred. Dr. Hardy also noted that UBMC failed to contact the National Practitioner Databank to inquire whether Dr. Allred had any malpractice claims pending against him until after Dr. Hardy had been terminated. I do not share the majority's conclusion that these facts give rise to any inferences supporting the presence of an improper pretextual termination. UBMC's investigation and discussions regarding whether to hire Dr. Allred took place prior to the Board's unanimous vote to terminate Dr. Hardy's employment agreement. While UBMC's investigation may not have been perfect, or even reached the correct result, Dr. Hardy, in my opinion, failed to produce evidence that UBMC made its decision to terminate Dr. Hardy or conducted its investigation of Dr. Allred in bad faith, or that such actions constituted pretext or capricious or illegal behavior.

¶ 28 UBMC presented the district court with uncontroverted evidence of good faith business reasons why it terminated Dr. Hardy's agreement, *see supra.* ¶ 15, and Dr. Hardy failed to produce evidence discrediting those reasons. Thus, in my view, the district court correctly concluded that UBMC terminated Dr. Hardy's agreement for just cause. I would affirm.

¶ 29 Associate Chief Justice Wilkins concurs in Chief Justice Durham's dissenting opinion.

1. In his brief before this court, Dr. Hardy also argues that UBMC's termination of the Agreement constituted a breach of the covenant of good faith and fair dealing. We decline to reach this issue because it was not preserved and is not properly before us. When the court of appeals remanded this case to the district court, it stated that "[t]he only remaining issue [was] whether the Board discharged Dr. Hardy for just cause." *Uintah Basin Med. Ctr. v. Hardy,* 2005 UT App 92, ¶ 20, 110 P.3d 168. The district court then ordered the parties to prepare and submit briefs on the just cause issue. Dr. Hardy did not contest the scope of that remand or raise the covenant of good faith and fair dealing issue in his responsive brief filed with the district court. Given this procedural history, we conclude it would be improper for us to entertain Dr. Hardy's argument on the issue of breach of the covenant of good faith and fair dealing.