2013 UT App 191

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF L.M., L.M., L.M., AND A.A.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

J.P.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20120520-CA
Filed August 1, 2013

Third District Juvenile, Salt Lake Department
The Honorable Charles D. Behrens
No. 1027718

Nicole A. Salazar-Hall, Attorney for Appellant
John E. Swallow and John M. Peterson, Attorneys
for Appellee
Martha Pierce, Guardian ad Litem

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGES
GREGORY K. ORME and CAROLYN B. MCHUGH concurred.

DAVIS, Judge:

¶1      J.P. (Mother) appeals the juvenile court's termination of her parental rights in four of her children. We affirm.

## BACKGROUND

¶2      The children were removed from Mother's home after two particularly severe incidents of domestic violence with her

paramour, M.A., in October 2011.[1] Because Mother had previously received reunification services when the Department of Child and Family Services (DCFS) became involved with the family in 2009, the State elected to proceed directly to the termination of Mother's parental rights without offering further reunification services.

¶3      Prior to the termination trial, the State notified the juvenile court that it intended to introduce hearsay statements made by the two oldest children (Half Sister and Older Sister) to their therapist and their foster mother,[2] pursuant to Utah Code section 78A-6-115(6) (the hearsay exception), which permits such testimony where the child in question is under eight years old and the witness is in a trust relationship with the child, *see* Utah Code Ann. § 78A-6-115(6) (LexisNexis 2012).[3] Mother objected to the introduction of

---

1. Additional background information is contained in *In re L.M.*, 2013 UT App 190, ¶¶ 2–8.

2. The therapist testified only to statements made by Older Sister. The foster mother testified regarding statements made by both Half Sister and Older Sister.

3. We note that the Utah Constitution permits the legislature to "amend the Rules of Procedure and Evidence adopted by the Supreme Court upon a vote of two-thirds of all members of both houses of the Legislature." Utah Const. art. 8, § 4. Interestingly, this provision explicitly granting the legislature the power to amend the rules of evidence was adopted one year *after* the hearsay exception was promulgated. *See* Act of March 27, 1984, S.J.R. 1, § 1, 1984 Utah Laws 2d Spec. Sess. 268, 269 (repealing and reenacting article 8 of the Utah Constitution, including adding the provisions in section 4); Act of March 8, 1983, ch. 163, § 1, 1983 Utah Laws 664, 664–65 (adopting the hearsay exception); *see also* Utah Const. art. 8, § 4 compiler's notes (Michie 1991) (indicating that the pre-1984 version of article 8 contained no provisions comparable to those now contained in section 4). However, the parties do not address,

(continued...)

this testimony, arguing that the hearsay exception was inapplicable in the context of a termination proceeding and that the State had failed to demonstrate that a trust relationship existed between the children and the witnesses. The juvenile court determined that the provision did apply to termination proceedings and that the State had sufficiently demonstrated the existence of trust relationships between the therapist and Older Sister, the foster mother and Older Sister, and the foster mother and Half Sister. The witnesses testified that Older Sister and Half Sister had confided to them incidents of abuse by M.A. against both Mother and the children. The foster mother also testified that they told her that Mother had left the children alone and given them "knock-out pills" so they would sleep while she was at work and that Mother "'spanked them a lot.'" Other witnesses, including Mother, also testified regarding M.A.'s violence against her.

¶4     The juvenile court found that Mother had neglected the children, that she was an unfit and incompetent parent, and that she was unable or unwilling to remedy the circumstances that caused the children to be in out-of-home placements. The court further found that it was in the children's best interests for Mother's rights to be terminated so the children could be freed for adoption "into a home where they will be secure, stable, loved, and protected from neglect and abuse." Accordingly, the juvenile court terminated Mother's parental rights.

ISSUES AND STANDARDS OF REVIEW

¶5     Mother first asserts that the juvenile court erred in determining that the hearsay exception applied in the context of a termination proceeding, both because the legislature did not intend

---

3. (...continued)
and we do not consider, what, if any, effect this may have on the propriety of the hearsay exception.

for it to apply and because constitutional due process protections preclude it from applying in this context. We review questions of statutory interpretation for correctness. *In re D.A.*, 2009 UT 83, ¶ 15, 222 P.3d 1172. We likewise review "[c]onstitutional issues, including questions regarding due process," for correctness. *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

¶6      Mother further asserts that even if the hearsay exception were applicable to termination proceedings, the juvenile court erred by determining that the therapist and the foster mother had trust relationships with Older Sister and Half Sister. This determination, which requires the juvenile court to apply statutory law to the facts of the case, is a mixed question of law and fact. *In re L.N.*, 2004 UT App 120, ¶ 11, 91 P.3d 836. Accordingly, "[w]e review the juvenile court's [factual] findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts." *Id.* (citation and internal quotation marks omitted).

¶7      Finally, Mother argues that there was insufficient evidence to support the juvenile court's termination of her parental rights. "Findings of fact in a parental rights termination proceeding are overturned only if they are clearly erroneous. Moreover, we defer to the juvenile court because of its advantageous position with respect to the parties and the witnesses in assessing credibility and personalities." *In re G.B.*, 2002 UT App 270, ¶ 9, 53 P.3d 963 (citations and internal quotation marks omitted).

## ANALYSIS

### I. The Plain Language of the Statute Indicates that the Hearsay Exception Was Intended To Apply in Both Adjudication and Termination Hearings.

¶8      The hearsay exception provides, "For the purpose of establishing the fact of abuse, neglect, or dependency, the court

may, in its discretion, consider evidence of statements made by a child under eight years of age to a person in a trust relationship." Utah Code Ann. § 78A-6-115(6) (LexisNexis 2012). Mother distinguishes between adjudication hearings conducted pursuant to a petition filed under Utah Code section 78A-6-304, *id.* § 78A-6-304, and termination hearings conducted pursuant to petitions filed under Utah Code section 78A-6-504, *id.* § 78A-6-504. She asserts that the relaxed admissibility standard permitted under the hearsay exception applies only in the context of adjudication hearings and not in the context of termination hearings.

¶9     First, she asserts that the statute itself should be interpreted as applying only to adjudication hearings. We disagree with Mother's analysis. The hearsay exception falls under "Part 1 General Provisions" of the Juvenile Court Act. *See* Utah Code Ann. tit. 78A, ch. 6, tbl. of contents, at 104–05 (LexisNexis 2012). Had the legislature intended it to apply only to adjudication hearings, it would presumably have included the rule in "Part 3 Abuse, Neglect, and Dependency Proceedings," which contains additional procedural rules for such non-termination hearings. *See id.* at 105–06. Furthermore, the existence of several explicit references to termination proceedings in section 78A-6-115, the section containing the hearsay exception, suggests that the section as a whole was intended to address both adjudication and termination proceedings. *See* Utah Code Ann. § 78A-6-115(2)(b)(ii), (4)(a), (5)(b)(ii).

¶10     The language contained in some of those provisions further supports this conclusion. *See generally Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592 ("We read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters."). First, section 78A-6-115(4)(a) permits the admission of "written . . . material relating to the minor's mental, physical, and social history and condition" "[f]or the purposes of . . . establishing the fact of abuse, neglect, or dependency in adjudication hearings *and in hearings upon petitions for termination of parental rights*." Utah Code Ann. § 78A-6-115(4)(a)

(emphasis added). Mother reads this provision as indicating that termination hearings are distinct from adjudication hearings in which "the fact of abuse, neglect, or dependency" is established; in other words, she suggests that one establishes the fact of abuse, neglect, or dependency only in adjudication hearings. However, Mother's reading is inconsistent with the grammatical structure of the provision. The phrase "in adjudication hearings and in hearings upon petitions for termination of parental rights" is a conjunctive prepositional phrase, the entirety of which modifies the verb "establishing." Thus, this provision clearly contemplates that "the fact of abuse, neglect, or dependency" may well be relevant in termination hearings as well as adjudication hearings. Because the hearsay exception applies where "the fact of abuse, neglect, or dependency" is at issue, it stands to reason that it would apply in the context of termination proceedings.

¶11 Furthermore, section 78A-6-115(5), which identifies the deadlines for disclosing information that will be used in a hearing under the Juvenile Court Act, specifically lists different deadlines for termination hearings and dispositional hearings. *Id.* § 78A-6-115(5). This suggests that the legislature had the wherewithal to distinguish between the two types of proceedings in that context and, thus, would have presumably done so in the subsection containing the hearsay exception as well had it intended for that provision not to apply to termination proceedings. For all these reasons, it is apparent from the plain language of the statute that the legislature intended for the hearsay exception to apply to termination proceedings.

## II. Mother Has Not Preserved Her Argument that the Hearsay Exception Is Unconstitutional as Applied in the Context of Termination Proceedings.

¶12 Mother also asserts that permitting someone in a trust relationship with the child to testify about statements made by the child in a termination hearing where the child was not available to testify and no finding of unavailability was made violates her due

process right to confront witnesses. "[T]he right to raise one's children is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution." *Campbell v. Campbell*, 896 P.2d 635, 641 (Utah Ct. App. 1995); *see also* Utah Code Ann. § 78A-6-503(1) (LexisNexis 2012). Accordingly, that right may not be terminated without due process of law. *See In re S.A.*, 2001 UT App 307, ¶ 12, 37 P.3d 1166 (citing U.S. Const. amend. XIV ("No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . .")); *see also* Utah Code Ann. § 78A-6-503(2) ("The court shall provide a fundamentally fair process to a parent if a party moves to terminate parental rights."). At a minimum, due process requires "adequate notice and an opportunity to be heard in a meaningful manner." *In re S.Y.T.*, 2011 UT App 407, ¶ 35, 267 P.3d 930 (citation and internal quotation marks omitted). This includes the right to confront witnesses. *In re J.B.*, 2002 UT App 268, ¶ 8, 53 P.3d 968; *see also* Utah R. Juv. P. 37A(a)(8) (permitting visually recorded testimony of a child only where "the child is available to testify and to be cross-examined at trial . . . or the court determines that the child is unavailable as a witness to testify at trial under the Utah Rules of Evidence"); *cf. State v. Nguyen*, 2011 UT App 2, ¶ 16 n.9, 246 P.3d 535 (explaining that the right to confrontation in the criminal context requires "an opportunity to cross-examine the declarant" and that rule 15.5 of the Utah Rules of Criminal Procedure was accordingly amended to "permit[] out-of-court statements by unavailable child witnesses only where 'the defendant had a previous opportunity to cross-examine the child concerning the recorded statement'" (quoting Utah R. Crim. P. 15.5(a)(1))), *aff'd*, 2012 UT 80, 293 P.3d 236.

¶13    However, Mother failed to preserve her confrontation argument. *See generally State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("[T]he preservation rule applies to every claim, including constitutional questions . . . ."). Before the juvenile court, she asserted only that "[u]nder both the United States Constitution and the constitution of this state, a parent possesses a fundamental liberty interest in the care, custody, and management of the parent's children." *See* Utah Code Ann. § 62A-4a-201(1)(a)

(LexisNexis Supp. 2012). She then attached a copy of the statute containing that language to her objection. That was the extent of her constitutional analysis below. "[T]o preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (second alteration in original) (citation and internal quotation marks omitted). This requires that the issue be "specifically raised" and supported by "evidence or relevant legal authority." *Id.* (citation and internal quotation marks omitted). Mother did not specifically raise her confrontation argument, relying only on a generalized assertion of a "liberty interest" in her parental rights, and did not support her confrontation argument with relevant authority. Accordingly, while the application of the hearsay exception to termination proceedings may well have constitutional implications, we decline to consider Mother's constitutional claim for the first time on appeal. *See In re A.K.*, 2012 UT App 232, ¶ 23, 285 P.3d 772.

### III. The Juvenile Court Did Not Err in Admitting the Hearsay Evidence.

¶14    Mother next asserts that even if the hearsay exception can appropriately be applied in termination proceedings, the juvenile court erred in finding that the therapist and the foster mother had trust relationships with the two children to whose statements they testified. In order to determine whether a child has a trust relationship with an individual, the juvenile court must consider not only the type of relationship at issue—e.g., parent–child, teacher–student—but also whether the child "in fact trusted" that individual. *In re L.N.*, 2004 UT App 120, ¶ 19, 91 P.3d 836. The juvenile court in this case specifically acknowledged this responsibility when it declined to accept the State's bare assertion of a trust relationship and explained that "the trust relationship . . . is . . . something the State [would] need[] to prove . . . during the trial before the statements would be admitted." The court then carefully considered the testimony of each witness regarding her relationship with the children before permitting the witness to

testify to the statements and specifically admitted only the hearsay testimony pertaining to statements made on or after the dates when the court determined that a trust relationship was established.

¶15 The therapist testified that she had met with Older Sister four times and that, while gaining the child's trust was "an ongoing process," Older Sister was becoming "more comfortable" with her as evidenced by her "volunteering more information [to the therapist] about her experiences." The therapist also testified that Older Sister appeared to "feel[] safe and comfortable with her foster mother," that she always wanted her foster mother to come into the therapy sessions with her, and that she would often "move her chair closer to the foster mom" during therapy sessions. The foster mother testified that on December 19, 2011, when the children had been living with her for a little over a month, Half Sister had come to her for comfort, confided in her about incidents of abuse by M.A., called her "mom," and told her that she loved her. She also testified that Half Sister regularly confided in her and was physically affectionate toward her. The foster mother testified that she formed a relationship of trust with Older Sister even sooner: "She's a very loving girl that, almost from . . . the first week, . . . began calling me 'mom,' . . . running to me, hugging me, giving me kisses, telling me she loved me, . . . telling me if she was hurt." Specifically, the foster mother testified that on November 14, 2011, after a visit with Mother, Older Sister "ran up to [the foster mother] and gave [her] a huge hug and sobbed and said that she was probably going to have to find a new mommy," and that the foster mother had comforted Older Sister until she fell asleep in her arms.

¶16 Mother does not assert that this testimony could not evidence the trust relationships found by the juvenile court, but only that the testimony was biased and therefore unreliable. However, "[i]t is the province of the trier of fact to assess the credibility of witnesses, and we will not second-guess the [juvenile] court where there is a reasonable basis to support its findings." *Reed v. Reed*, 806 P.2d 1182, 1184 (Utah 1991). The testimony

supports the juvenile court's determination that a trust relationship existed between the children and the foster mother and between Older Sister and her therapist. *Cf. In re L.N.*, 2004 UT App 120, ¶ 19 (holding that "the trial court did not err in finding that a trust relationship existed between" a foster mother and foster child where it found that the child "immediately became attached" to the foster mother and was confiding in her when she made statements admitted under the hearsay exception). Accordingly, the juvenile court did not err in admitting the hearsay testimony.

### IV. The Evidence Is Sufficient To Support Termination of Mother's Parental Rights.

¶17    Mother next challenges the juvenile court's finding that she had neglected her children and was an unfit parent who was unwilling or unable to remedy the circumstances leading to the children's out-of-home placement. She also asserts that the juvenile court erred in determining that termination was in the children's best interests. Although Mother has marshaled the evidence in support of the juvenile court's findings, she fails to "ferret out a fatal flaw in the evidence," *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct. App. 1991). Instead, she asserts that the juvenile court's findings were unjustified in light of other evidence tending to support the opposite conclusion.[4] Essentially, she is

---

4. For example, Mother asserts that she was afraid of M.A. because he "was highly dangerous and virtually unstoppable," that she received inadequate assistance to ensure her safety against M.A., and that she had cooperated in seeking a protective order and completing treatment. Assuming these points may tend to support the case against termination, they do not demonstrate that the juvenile court's findings were clearly erroneous in light of other evidence indicating Mother's unfitness. Mother's argument regarding the juvenile court's best interests determination similarly focuses on the juvenile court's weighing of the evidence rather than the sufficiency of the evidence supporting the juvenile court's

(continued...)

"attempting to reargue the weight of the evidence on appeal." *See State v. Lopez*, 2001 UT App 123, ¶ 19, 24 P.3d 993. "[W]e have repeatedly recognized the juvenile court's prerogative to weigh evidence, deferring to both the juvenile court's opportunity to judge credibility first hand and its special training, experience and interest in this field." *In re R.B.*, 2012 UT App 37, ¶ 9, 271 P.3d 827 (citation and internal quotation marks omitted). Accordingly, we will not reverse based on the existence of evidence weighing against termination where "other evidence presented at trial was sufficient to support a prima facie case for termination." *Id.*

¶18 The evidence indicated that DCFS had previously been involved with the family as a result of Mother's substance abuse problems and domestic violence with M.A., that she remained in an extremely violent relationship with M.A. for several years, that the children had witnessed at least one brutal incident of domestic violence, that Mother had been uncooperative with authorities attempting to protect her from M.A., and that the children were physically and developmentally delayed and suffered from severe dental neglect. Mother testified that M.A.'s abuse had "traumatized" her and admitted that she could "only imagine what it's doing to [her] kids." This evidence was sufficient to support the juvenile court's finding that Mother had neglected her children and was an unfit parent.

¶19 The evidence also supports the juvenile court's finding that termination was in the children's best interests. The children witnessed severe domestic violence while living with Mother.[5] The DCFS caseworker testified that she did not believe Mother would be capable of adequately caring for and protecting her children in

---

4. (...continued)
findings.

5. They were also allegedly subjected to physical and sexual abuse at the hands of M.A., but the juvenile court explicitly indicated that it did not factor the child abuse allegations into its decision.

the future and that available services to assist in this endeavor had been exhausted. Three of the children have been residing with the same foster family since removal, and the other child, Half Sister, though removed from the foster home two weeks before the trial, is receiving therapy and has regular contact with the foster family and her siblings. The foster family has been able to care for the children's physical and emotional needs, and at least two of the children have become strongly bonded to the foster mother and call her "mom." The children are in therapy and have received necessary medical and dental treatment. The foster family is willing to adopt the three children still residing with them and would consider allowing Half Sister to return to the home if certain behavioral concerns can be resolved. In light of this evidence, we cannot say that the juvenile court clearly erred in concluding that termination was in the children's best interests.

CONCLUSION

¶20    We conclude that the hearsay exception, by its plain language, applies to termination proceedings. Mother failed to preserve her argument that applying the statute in this context violates her constitutional right to confrontation, and we accordingly decline to consider that argument. We also conclude that the juvenile court did not err in determining that the therapist and the foster mother were qualified to testify to certain statements made by the children, in accordance with the hearsay exception, by virtue of having developed trust relationships with those children, as found by the juvenile court. Finally, we see no clear error in the juvenile court's findings that Mother neglected her children and was an unfit parent and that termination was in the children's best interests. Accordingly, we affirm.

————————