**2017 UT App 154**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF A.R. AND M.R.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

J.S.R.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20160330-CA
Filed August 17, 2017

Third District Juvenile Court, Salt Lake Department
The Honorable Mark W. May
No. 1108329

Colleen K. Coebergh, Attorney for Appellant

Sean D. Reyes and John M. Peterson, Attorneys
for Appellee

Martha Pierce, Guardian ad Litem

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and JILL M. POHLMAN concurred.

TOOMEY, Judge:

¶1      J.S.R. (Father) appeals the juvenile court's order terminating his parental rights. We reverse.

BACKGROUND

¶2    A.R. and M.R., born in March 2008 and June 2009, respectively, are the children of C.S. (Mother) and Father.[1] In December 2014, the Division of Child and Family Services (DCFS) filed a verified petition alleging that the children were "abused, neglected and/or dependent." The petition alleged there was a domestic disturbance between Father and Mother and that Father was arrested for violating a protective order between him and Mother. It also alleged Mother was using methamphetamine, sometimes in the children's presence. At a shelter hearing during which both parents were present and represented by counsel, the juvenile court gave DCFS temporary legal and physical custody of the children.

¶3    An adjudication hearing took place in January 2015. Father was incarcerated at that time but was transported to the hearing. The juvenile court determined that Father had been arrested for violating a protective order between himself and Mother. It also determined that the children were dependent[2] as to Father and neglected[3] as to Mother and gave custody of the children to DCFS. It also ordered DCFS to create a plan to address the children's needs.

---

1. Mother was also a party to the termination proceedings. Her parental rights were terminated and she filed a separate appeal. *See In re A.R.*, 2017 UT App 153.

2. A "dependent child" is one "who is homeless or without proper care through no fault of the child's parent." *See* Utah Code Ann. § 78A-6-105(11) (LexisNexis Supp. 2016).

3. A "neglected child" includes one who lacks "proper parental care . . . by reason of the fault or habits of the parent." *See* Utah Code Ann. § 78A-6-105(27)(a)(ii) (LexisNexis Supp. 2016).

¶4    In February 2015, the court conducted a dispositional hearing. The State explained that the Utah Code "requires DCFS to [provide] reasonable services to a father who's incarcerated, unless [the court] determines that those services would be detrimental to the minor." The court concluded that reunification services would not be detrimental to the children but acknowledged the difficulty of providing them to an incarcerated parent, especially since Father still had ten months until his release. The court stated:

> But at this point I'm not ordering the Division to go out and set up services at the prison, because I'm not going to find that that's reasonable. So the Division will provide reasonable services, meaning that to the extent that [Father] can take those services . . . at the prison, [Father] should avail [himself] of those opportunities.

> When [Father] get[s] out [he] need[s] to immediately contact the Division, and then the Division will have to expedite placement in some sort of domestic violence/anger management.

The court stated that any contact the children had with Father should be approved by their therapist and concluded, "So that will be the treatment plan for [Father]. That's what you'll have to put in writing and make sure he has a copy of it."

¶5    The court's conclusion regarding reunification services is further memorialized in a disposition order (the Disposition Order). The court found that services would not be detrimental to the children, that there were no reasonable services DCFS could provide to Father while he was in prison, that it was "reasonable to expedite services for [Father] if he contacts [DCFS]" upon his release from prison, that Father should avail himself of services offered at the prison, and that the child and family plan for Father should be amended to include classes

available to him in prison. Additionally, the minutes of the disposition hearing stated, "The Court orders DCFS to provide reasonable reunification services for the father and children."

¶6      The State filed a verified petition for termination of parental rights as to both parents in September 2015. With respect to Father, the petition stated he was currently incarcerated and listed his criminal convictions. It acknowledged that the court had "ordered DCFS to provide reasonable reunification services" for him, but urged the court to conclude that DCFS had provided reasonable reunification services for Father and to terminate his parental rights on several grounds. The matter proceeded to trial beginning in December 2015 and intermittently continued over eleven days through April 2016.

¶7      Father was released from prison on January 5, 2016, between the first and second days of trial. He contacted a DCFS caseworker the next day.

¶8      During trial, the caseworker testified she was aware that reunification services had been ordered for Father. She explained she had provided supervised visitation with the children but stated she had not contacted Father's parole officer, had not investigated his living situation, had not inquired about which classes Father had taken, and did not know whether he had participated in domestic violence assessments. She testified she had not provided a service plan to Father, and indeed, that a plan had not yet been drafted. The State then asked the court to determine that both parents had received reasonable reunification services. Both the guardian ad litem and the court expressed "grave concerns about whether the State . . . met the first requirement of reasonable efforts concerning [Father]." The court decided to postpone that determination and stated, "[U]ntil [the court] determine[s] otherwise, [the court will] have the Division continue to provide services" to both parents.

¶9     Later in February 2016, on the fifth day of trial, the State again raised the issue of reunification services, asking the court to rule on whether "services were either extended or whether the Court finds them appropriate." The court replied that it had "already ruled on the issue and [it had] already ruled that reunification services continued." But after reconsidering the Disposition Order, the court noted "in the disposition order, there's something different . . . [it] really did not order reunification services for [Father] but indicated that, once he was released from prison . . . they could be expedited." The court ordered briefing on whether, "given the findings of fact and time frames that we're dealing with," DCFS should "even be working on a service plan for [Father]" and whether "reunification services should even be offered to [Father]."

¶10    After considering the briefing from Father's counsel, the State, and the guardian ad litem, the juvenile court issued a written order (the March Order) stating that the court "did not order reunification services for [Father]." The trial concluded in April 2016. The court determined Father was an unfit parent, that he had neglected his children "by exposing them to domestic violence," and had made only token efforts to support them. The court terminated Father's parental rights, concluding termination was in the children's best interests. Father appeals.

## ISSUES AND STANDARD OF REVIEW

¶11    Father raises several issues on appeal. First, during the course of trial, the children's foster mother testified to several hearsay statements the children made to her, and Father challenges the constitutionality of the statute under which those hearsay statements were admitted.[4] Second, Father contends the

4. The juvenile court admitted the statements under Utah Code section 78A-6-115, which states that hearsay statements from

(continued…)

juvenile court abused its discretion in allowing the State to amend its verified petition during trial. Third, Father contends the court erred by "retroactively deciding it had not ordered reunification services" in its March Order. Finally, Father raises a due process challenge. Because we ultimately determine the juvenile court erred in its decision regarding reunification services and reverse its decision on this basis, we need not analyze Father's other claims.

---

(…continued)

children under eight are admissible if they are made "to a person in a trust relationship" for "the purpose of establishing the fact of abuse, neglect, or dependency." Utah Code Ann. § 78A-6-115(6) (LexisNexis 2012). Father argues this statute is unconstitutional, in part because the legislature did not have authority under the Utah Constitution to promulgate such a rule. In support of his argument, Father cites *In re L.M.*, 2013 UT App 191, 308 P.3d 553. In that case, this court acknowledged that the Utah Constitution permits the legislature to amend the Utah Rules of Evidence, but it also noted that "this provision explicitly granting the legislature the power to amend the rules of evidence was adopted one year *after* the hearsay exception was promulgated." *Id.* ¶ 3 n.3. Because the parties in that case did not address what effect that fact may have had on the "propriety of the hearsay exception," this court declined to consider the matter. *Id.* We also do not address the constitutionality of the statute here because we reverse the juvenile court's decision on alternative grounds. *See Clegg v. Wasatch County*, 2010 UT 5, ¶ 26, 227 P.3d 1243 ("[W]here any direction we may provide . . . may ultimately prove to be irrelevant, or where there are possible circumstances under which we would not need to address the constitutionality of [a statute], to do so would be to impermissibly render an advisory opinion." (omission and second alteration in original) (citations and internal quotation marks omitted)).

¶12   In concluding that reunification services had not been ordered for Father, the juvenile court was interpreting its own prior order. "A court's interpretation of its own order is reviewed for clear abuse of discretion and we afford the district court great deference." *Uintah Basin Med. Center v. Hardy*, 2008 UT 15, ¶ 9, 179 P.3d 786. Additionally, because the juvenile court has an "advantageous position with regard to the parties and witnesses," we afford it "'a high degree of deference,' overturning its decision only if it is 'against the clear weight of the evidence or leave[s] the appellate court with a firm and definite conviction that a mistake has been made.'" *In re A.K.*, 2015 UT App 39, ¶ 15, 344 P.3d 1153 (stating that a juvenile court's decision whether to offer reunification services is within its sound discretion) (alteration in original) (quoting *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435).

ANALYSIS

¶13   Father contends the juvenile court erred in interpreting its prior order. He asserts the court's Disposition Order stated that reunification services were ordered for Father, and he argues every participant understood "that the Court had ordered reunification services." He further argues the March Order, which stated that reunification services had never been ordered, prejudiced his case. We begin by examining the March Order in greater depth.

I. Additional Background

¶14   The court's March Order stated that during trial, "[t]here ha[d] been discussions and confusion about whether reunification services were ordered for [Father]." This order then summarized the court's reasoning behind the prior Disposition Order. At the time of the disposition hearing, *In re A.T.*, 2013 UT App 184, 307 P.3d 672, *rev'd*, 2015 UT 41, 353 P.3d 131, was controlling authority. That case stated a juvenile court was

required to order reunification services for an incarcerated parent unless the court determined that services would be detrimental to the children. *Id.* ¶ 13; *see* Utah Code Ann. § 78A-6-312(25)(a) (LexisNexis 2012). In the March Order, the court explained that at the disposition hearing, its analysis had focused on (1) whether services would be detrimental to the children and (2) what services would be reasonable. The court acknowledged that at the disposition hearing it had determined that services would not be detrimental to the children and that it had determined DCFS could not provide reasonable services while Father was incarcerated. In the March Order, the court admitted it had made a "confusing statement" at the disposition hearing:

> So the Division will provide reasonable services, meaning to the extent that you can take those services . . . out at the prison, you should avail yourself of those opportunities. . . . When you get out you need to immediately contact the Division and then the Division will have to expedite placement in some sort of domestic violence/anger management.

(Internal quotation marks omitted.)

¶15 The March Order provided this interpretation of the "confusing statement":

> The court's intended meaning was that it was not ordering the Division to provide reunification services to the father while he was in prison; the father should avail himself of any services he could while incarcerated; and when the father was released from prison, the Division should help him get into domestic violence and anger management classes.

¶16 The court additionally stated that "any such confusion was cleared up by the formal written order prepared by the Assistant Attorney General," and quoted the following statements from the Disposition Order:

> 2. Based on the Father's expected 10 month incarceration, there are not services that are reasonable that The Division of Child and Family Services can provide the father at this time. The 10 months remaining on the father's sentence pose a problem and an impediment to reasonable services.
>
> 3. The Division of Child and Family Services does not offer any services in the prison.
>
> 4. When he gets out of prison, it is reasonable to expedite services for him if he contacts The Division of Child and Family Services.
>
> 5. There may be services or classes that are offered by the prison that the father could avail himself of. If there are, the father should avail himself of those services.
>
> 6. The child and family plan for the father should be amended to include the father attending any classes in domestic violence, anger management or parenting that are available to him in prison.

¶17 The March Order concluded by stating, "At no time during the [Disposition Hearing] did the court state that reunification services were ordered for the father. The court did not order reunification services for the father." Alternatively, the court concluded that reunification services "are a gratuity provided to parents by the Legislature" and "because there is no fundamental right to receive services, the decision to provide or

deny services is in the judge's discretion." (Citations and internal quotation marks omitted.)

## II. Abuse of Discretion

¶18 The juvenile court abused its discretion in interpreting its prior Disposition Order. The plain language of both the Disposition Order and the March Order contradict the court's ultimate conclusion that services were not ordered for Father.

¶19 In the Disposition Order, the court stated that based on Father's incarceration, there were "no services that are reasonable that [DCFS] can provide the father *at this time*." (Emphasis added.) It then stated, "When he gets out of prison, it is *reasonable to expedite services* for him if he contacts [DCFS]." (Emphasis added.) The plain language of these statements reveals that the court did not expect DCFS to provide services for Father while he was in prison, because such services would not be reasonable. But the court further explained it was reasonable for DCFS to expedite services for Father once he was released. This indicates the court ordered expedited services for Father once he made contact with DCFS after his release.

¶20 The court attempted to clarify its determination in the March Order, but its clarification also reveals that at least some services were ordered for Father. At the disposition hearing, the court stated that DCFS "will provide reasonable services," that Father should avail himself of classes offered at the prison, and that DCFS would help expedite placement in domestic violence or anger management classes upon his release. In the March Order, the court interpreted this statement to mean the court "was not ordering [DCFS] to provide reunification services to the father *while he was in prison*; . . . and *when the father was released from prison*, [DCFS] should help him get into domestic violence and anger management classes." (Emphases added.) Similar to the statements in the Disposition Order, these statements demonstrate that some services were in fact ordered

for Father: DCFS was ordered to help Father enroll in classes once he was released from prison.

¶21    The March Order attempts to clarify any confusion over whether reunification services were ordered. But both the court's interpretation of its oral statements at the disposition hearing and the written Disposition Order conflict with the March Order's ultimate conclusion that the court "did not order reunification services for the father."

¶22    Next, the authority on which the court relied during the disposition hearing suggests the court ordered some services for Father. The March Order indicated that the juvenile court relied on *In re A.T.*, 2013 UT App 184, 307 P.3d 672, *rev'd*, 2015 UT 41, 353 P.3d 131, in determining whether reunification services were appropriate. That case, which the court notes was the controlling authority at the time, "requires the juvenile court to order reasonable services to [an incarcerated parent] unless it makes an actual determination that those services would be detrimental to the [c]hildren."[5] *See id.* ¶ 12 (noting that Utah Code section 78A-6-312(25)(a) (LexisNexis 2012) "expressly states that 'the court *shall* order reasonable services *unless it determines* that those services would be *detrimental to the minor*'").

¶23    Under section 312, the juvenile court focused on a two-part analysis: whether services would be detrimental to the

---

5. *In re A.T.* (*A.T. I*), 2013 UT App 184, 307 P.3d 672, was overruled by the Utah Supreme Court in 2015. *See In re A.T.* (*A.T. II*), 2015 UT 41, 353 P.3d 131. *A.T. II* issued on March 27, 2015, after the juvenile court had relied on *A.T. I* in the disposition hearing. *A.T. II* held that reunification services for an incarcerated parent need only be ordered when reunification services for that parent are consistent with the juvenile court's permanency goal for the child. *Id.* ¶¶ 14–21.

children, and if not, what services would be reasonable. Because the court determined services would not be detrimental to the children, the remaining question was what services were reasonable, not whether services would be offered at all. Additionally, at the disposition hearing, the court indicated that it believed services were required by the statute: "Looking at the statute . . . services are a gratuity offered by the State unless you're incarcerated. Then you do get them." Thus, the authority the court was operating under at the time of the disposition hearing required it to order services to an incarcerated parent if those services were not detrimental to the children. Both the hearing transcript and the Disposition Order indicate the court's understanding of this authority, which cuts against the court's later interpretation stating it did not order services for Father.

¶24    We also note that until February 2016, five days into the termination trial and a full year after the disposition hearing, all parties understood the Disposition Order to mean that the court had ordered reunification services for Father. The court stated at the disposition hearing that "the Division will provide reasonable services, meaning that to the extent that [Father] can take those services . . . at the prison, [he] should avail [himself] of those opportunities" and that once he was released from prison, "the Division will have to expedite placement in some sort of domestic violence/anger management." In the Disposition Order, the court concluded that when Father "gets out of prison, it is reasonable to expedite services for him if he contacts [DCFS]." The disposition hearing minutes reflect that the court "order[ed] DCFS to provide reasonable reunification services for the father and children."

¶25    In its petition to terminate parental rights, the State acknowledged that the court had ordered reunification services, and in his reply, Father confirmed that DCFS was ordered to provide reasonable reunification services. In fact, one of Father's defenses at trial rested on the fact that the court had ordered

reunification services but the State had not made reasonable efforts to provide them. During trial, the State asked the court to terminate services, and the court reiterated that it had "ordered reunification services" and that they would continue. The guardian ad litem also raised "grave concerns about whether the State . . . met the first requirement of reasonable efforts" concerning Father. *See* Utah Code Ann. § 78A-6-507(3)(a) (stating that, except in specified circumstances, "in any case in which the court has directed the division to provide reunification services to a parent, the court must find that the division made reasonable efforts to provide those services before the court may terminate the parent's rights"). Finally, the DCFS caseworker assigned to Father's case acknowledged that Father had the benefit of reunification services. Each party involved in the termination trial separately expressed the belief that services had been ordered for Father, and the trial proceeded under that assumption for two months.

¶26    Furthermore, in the March Order, the court indicated that there "have been discussions and confusion about whether reunification services were ordered" for Father. But in reviewing the transcripts, it seems the discussions and confusion were not in regard to whether services had been ordered, but instead, involved *what* services would be reasonable given Father's situation.

¶27    The discussion surrounding services first arose when the State requested a court ruling on whether "services were either extended or whether the Court finds them appropriate." The State's main contention was that Father should not be able to request a service plan from DCFS where the twelve-month statutory period for reunification services had already expired.[6]

---

6. An additional complication to this issue was the fact that the permanency hearing had been combined with the termination

(continued…)

The guardian ad litem then directed the court's attention to the Disposition Order, noting the determination that services were not reasonable while Father was incarcerated but could be expedited once Father was released and stating, "So as we address those questions of reasonable services, I think they needed to be guided by . . . what the Court found and what the Division [was] ordered to do . . . ." The court then noted the Disposition Order stated that reunification services could be expedited once Father was released from prison and reiterated the State's argument that it should not have to provide those services because the statutory deadline for services had already run. *See* Utah Code Ann. § 78A-6-314(6). Finally, the court ordered briefing on whether "reunification services should even be offered to [Father]" and whether DCFS should "be working on a service plan for [Father] at this point, given the findings of fact and given the time frames that we're dealing with[.]"

¶28    The court noted that "at this point, no service plan has ever been drafted, no services have ever been ordered; [the Disposition Order] was an order that [was prospective]: When [Father] gets out, expedite this." But the main issue with which the court seemed concerned was whether the State should have to provide services considering the timing of Father's release from prison and the passing of the statutory deadline for services.

---

(…continued)
trial. Thus, the court did not begin hearing evidence on whether the State had made reasonable efforts to provide the parties with services and whether services should be extended or terminated until after the twelve-month deadline for services had already expired. *See* Utah Code Ann. § 78A-6-314(6) (LexisNexis Supp. 2016) (noting a court "may not extend reunification services beyond 12 months after the day on which the minor was initially removed from the minor's home").

¶29 The State's motion in response to the court's request for briefing was the first time any party had argued that services had never been ordered for Father. Citing authority that was issued after the disposition hearing, the State argued the court "was not required to order reunification services to Father because he was incarcerated" and claimed that the court "correctly ordered no DCFS reunification services for him." *See A.T. II*, 2015 UT 41, 353 P.3d 131. The State concluded that ordering services "at this point is inappropriate because the twelve-month deadline for reunification services has passed." In contrast, the guardian ad litem's motion argued that the court "should clarify that [DCFS] is *no longer required* to provide services to [Father]." (Emphasis added.) The March Order followed the lead in the State's briefing, and instead of discussing what services were reasonable given the timing concerns, it discussed only whether services had been originally ordered by the court.

¶30 The discussion that preceded the briefing and the briefing itself demonstrate the court was trying to discern what services should be offered to Father given the timing issues. There is an important difference between (1) whether services were actually ordered and (2) what services would be reasonable to offer under the circumstances. The discussion revolved around the latter issue, and the former issue—whether services were originally ordered—was not raised until the State's briefing was submitted.

¶31 Finally, it is troubling that the confusion surrounding reunification services manifested itself only after it became clear the State's case was in jeopardy. During cross-examination of the DCFS caseworker, Father's counsel revealed that the State had undertaken minimal effort to provide services to Father. Both the court and the guardian ad litem expressed "grave concerns about whether the State . . . met the first requirement of reasonable efforts concerning [Father]." The court asked the

State directly, "So if I find the Division so far, based on the information I have, has failed to make reasonable efforts concerning [Father], what's your position?," which demonstrates the court's skepticism that the State had met its burden.

¶32   Under Utah law, if a court orders the State to provide reunification services, it must determine that the State made reasonable efforts to provide those services before it can terminate parental rights. *See* Utah Code Ann. § 78A-6-507(3)(a) (LexisNexis 2012). Father's defense was based on demonstrating that even though services were ordered, the State did not make reasonable efforts to provide them. Father's counsel revealed the minimal efforts the State had made in providing services and exposed a potentially fatal weakness in the State's case. It was only after this weakness was revealed that the court interpreted its order to mean that services had never been ordered for Father.[7]

---

7. In the March Order, the juvenile court cited *In re D.W.*, 2006 UT App 42U (per curiam), which states, "Because there is no fundamental right to receive services, the decision to provide or deny services is 'in the judge's discretion' and 'a judge may deny services if for any reason he or she finds they are inappropriate.'" *Id.* at para. 2 (quoting *In re N.R.*, 967 P.2d 951, 955–56 (Utah Ct. App. 1998)). The court relied on this language for an alternative basis for denying reunification services. But, although a judge has discretion to award reunification services, once it orders such services, it must "determine whether the services offered or provided by the division under the child and family plan constitute 'reasonable efforts' on the part of the division." Utah Code Ann. § 78A-6-312(12)(a)(i) (LexisNexis Supp. 2016); *see also id.* § 78A-6-507(3)(a) (LexisNexis 2012) ("[I]n any case in which the court has directed the division to provide reunification services to a parent, the court must find that the division made reasonable efforts to provide those services before

(continued…)

¶33 Given the plain language of the Disposition Order and the March Order, the authority the court relied on in the disposition hearing, the discussion surrounding the March Order, and the context of the matter in the entire trial, the juvenile court clearly abused its discretion in interpreting the Disposition Order to mean that reunification services had never been ordered for Father. There is significant evidence that the court ordered at least some services for Father after he was released from prison. The juvenile court is granted great deference in interpreting its own orders, but we are firmly convinced a mistake has been made in this case. *See Uintah Basin Med. Center v. Hardy*, 2008 UT 15, ¶ 9, 179 P.3d 786; *In re A.K.*, 2015 UT App 39, ¶ 15, 344 P.3d 1153. Though we conclude the court abused its discretion in stating that no services were ordered, we do not comment on the reasonableness of the services provided to Father.

CONCLUSION

¶34 Because the juvenile court abused its discretion in interpreting its prior order, we reverse and remand this case for a new trial.

———————

(…continued)
the court may terminate the parent's rights."). The court did not make this necessary determination and could not have terminated reunification services without it.